763 So.2d 514 (2000)
4139 MANAGEMENT INC., etc., Appellant,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT, etc., Appellee.
No. 5D99-1742.
District Court of Appeal of Florida, Fifth District.
July 21, 2000.
*516 Harry W. Carls and Colleen A. Braden of Taylor & Carls, P.A., Orlando, for Appellant.
Michael M. Metz of Department of Labor and Employment Security, Tallahassee, for Appellee.
ORFINGER, M., Senior Judge.
4139 Management, Inc., doing business as Moontide Condominium Association [hereinafter Association], appeals the order of the Division of Unemployment Compensation affirming and adopting the Special Deputy's recommended order determining that Alison Stratton and the other housekeepers/maids doing work at the condominium were employees of the Association for purposes of unemployment compensation benefits. Based on the evidence presented, the Special Deputy had concluded that the Association exercised "a sufficient degree of discretionary control over the details of the means, manner and method of the work performance of these housekeepers/maids to establish that they are the [Association's] employees within the meaning of the law." Our review of the record leads us to the conclusion that the Special Deputy misapplied the law to the facts, and accordingly, we reverse the order.
The Association is an incorporated condominium association. As part of its function, the Association provides management of rental units in the condominium. To meet the needs of cleaning the rental units after tenants depart, the Association arranges with certain individuals to perform services as housekeepers/maids. Alison Stratton cleaned rental units at Moontide Condominium on an as-needed basis, providing her own cleaning supplies. After several years working as a housekeeper/maid, Stratton became employed as a secretary for the Association. Stratton walked off her job and filed for unemployment benefits following a confrontation with a tenant. Her claim for unemployment benefits calculated on the entire length of time she worked at the condominium was upheld by the Division. The Association does not challenge Stratton's claim for benefits calculated on her employment as a secretary, but does contend that she is not entitled to benefits calculated on her earnings working as a housekeeper/maid. The issue here is whether Stratton and the other housekeepers/maids are independent contractors or employees of the Association for purposes of unemployment compensation benefits.
Section 443.036(19)(a)1.b., Florida Statutes (1997), provides that "employment" includes any service performed by "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." In Cantor v. Cochran, 184 So.2d 173 (Fla.1966), the supreme court reaffirmed its approval of Restatement (Second) of Agency § 220 (1958), which sets out the factors to be considered in determining whether one is an employee or an independent contractor:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;

*517 (e) whether the employer or workman supplies the instrumentalities, tools and a place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by time or job;
(h) whether or not the work is part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant;
(j) whether the principal is or is not in business.
Applying the test set forth in Cantor, the Division's final order found substantial competent evidence that the persons employed as housekeepers/maids were Association employees rather than independent contractors.
The first element of the Cantor test, control, is a primary indicator of status. Keith v. News & Sun Sentinel Co., 667 So.2d 167, 171 (Fla.1995); VIP Tours of Orlando, Inc. v. State, Dep't of Labor & Employment Sec., 449 So.2d 1307 (Fla. 5th DCA 1984). As explained in Kane Furniture Corp. v. Miranda, 506 So.2d 1061 (Fla. 2d DCA), rev. denied, 515 So.2d 230 (Fla.1987), if control is confined to results only, there is generally an independent contractor relationship, whereas if control is extended to the means used to achieve the results, there is generally an employer-employee relationship.
The Special Deputy found that the Association's property manager instructed the maids in how they were to accomplish various tasks, inspected the work, and occasionally asked maids to redo their work if she found it unsatisfactory. The Special Deputy also noted the existence of a task list, which gave the maids a list of jobs to be completed for each unit cleaned, and a job description paper, which established what was required, allowed, and prohibited. The Special Deputy concluded that these factors demonstrated the level of control necessary to establish that the housekeepers/maids were the Association's employees.
The Special Deputy conducted a telephone hearing at which Stratton was the only housekeeper/maid to testify. Stratton testified that on her first day on the job, the property manager took her to the units and showed her what was expected. This alone is not sufficient exercise and control over the details of the work so as to meet the criteria of Cantor. Rather, it is merely an orientation which would be expected in any job. Neither does the fact that the property manager made occasional inspections of the work make Stratton an employee. An employer has the right to inspect the job being performed to determine whether the worker is doing the quality of job he or she was hired to do. See Delco Indus., Inc. v. State, Dep't of Labor & Employment Sec., 519 So.2d 1109 (Fla. 4th DCA 1988) (holding that the employer's act of monitoring its phone solicitors to assure accurate representation of the products did not establish an employer/employee relationship); D.O. Creasman Elecs., Inc. v. State, Dep't of Labor & Employment Sec., 458 So.2d 894 (Fla. 2d DCA 1984) (rejecting the special deputy's conclusion that the worker was an employee because the employer checked each job for correctness and could make the worker redo the job if it was done incorrectly). The Special Deputy, by equating the right to inspect the completed job with the direct supervisory function of an employer over his employee, misapprehended the primary distinction between an employee and an independent contractor. An employer does not give up the right to require a certain standard of performance just because the worker is an independent contractor.
In reaching his conclusion, the Special Deputy placed undue emphasis on the existence of two documents, one entitled "Maid's Clearance Report" and the other "Maid's Job Description." The clearance report is a checklist of jobs which are to be done in each unit. Stratton *518 testified that the property manager wanted the maids to do everything that was on the list and that the maids used the report for each unit. The report had to be turned in for the maids to get paid. Nothing about the list tells the maids how to do their work nor does it indicate any exercise of control over the means used to achieve the results; the list simply sets forth what work is to be done. The "Maids Job Description" listed what cleaning products were to be used, prohibited use of the unit's cleaning supplies or cleaning apparatus, listed the duties maids often forget, and directed maids to note damages. However, Stratton testified that she had never seen this document, that nothing like that had ever been given to her, and that she had never given such a list to anyone else. Moreover, she testified that she did not use the cleaning products listed on the document.[1]
The evidence simply does not suggest an employer/employee relationship. The Association did not own any of the units which the maids cleaned, neither did it control which maids cleaned which units. Keys were left at the front desk for the units which required cleaning, and the maids would pick up the keys, apparently at random. Stratton and the other maids worked only when there were units to clean and could decline the Association's request to come in to clean if they so chose. They were free to, and in fact did, work for others as well as at the Association's condominium. Stratton herself had business cards announcing "Alison Stratton's Housekeeping Service-commercial-residential" with her phone number and post office address. Maids submitted invoices for the units they cleaned and were paid on a per unit basis, regardless of the time required to complete the work. Additionally, they often brought spouses, friends and relatives to help clean. At the end of the year, the Association gave the maids a Form 1099 "Miscellaneous Income" for the maids to report their income. The maids did not receive any benefits such as vacation, sick leave or insurance, and no federal income tax or social security taxes were withheld from their pay.
We do not consider the Association's argument that the maids fall within the "casual labor" exception to the definition of the term "employment," see § 443.036(19)(n), Florida Statutes (1997), because it was not raised below. Neither do we further lengthen this opinion by discussing the other factors listed in Cantor, none of which point to an employee relationship with the Association. For the reasons expressed, we reverse the final order of the Division with directions to enter judgment for the Association.
REVERSED.
THOMPSON, C.J., and PETERSON, J., concur.
NOTES
[1] Stratton supplied her own cleaning supplies, but used the mop, broom and vacuum cleaner in each unit which were the property of the respective unit owners. Even if the use of the unit owner's tools can be attributed to the Association, an owner can furnish some of the tools necessary without jeopardizing the independent contractor status of its workers. See Dart Indus., Inc. v. Department of Labor & Employment Sec., 596 So.2d 725, 727 (Fla. 5th DCA 1992) (holding that although the employer supplied the paint and tools needed for the worker to paint scenery, the worker, who also furnished some of his own tools, was an independent contractor).