ROWE, J.
This is an appeal of a final summary judgment entered in favor of Appellees TIMCO Aviation Services, Inc. (TIMCO) and TRIAD International Maintenance Corporation (TRIAD)[1] against Appellant, Travis Strickland, who was the plaintiff below in this personal injury action. We affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

Strickland was employed by Joye Painting. Joye Painting entered into a contract with TIMCO to perform work on an airplane hangar operated by TIMCO. The proposal submitted to TIMCO provided that Joye Painting would pressure wash the roof of the hangar and perform repair and maintenance on the skylights on the roof.
Joye Painting used a chlorine mixture to pressure wash the roof surface. Strickland testified that he typically pressure washed from the top of the roof down. However, at the time of the accident, he was walking horizontally across the roof to reach a spot he had missed. Strickland stated that mist got behind his glasses and into his eyes, causing them to burn. He opened his eyes, but he could not see; “it was like a whole bunch of white specks were on [my eyes].” Strickland explained that it was at this point that he put his foot down to collect himself. When he did so, Strickland stepped on a skylight and fell five stories to the ground.
As a result of injuries he sustained from the fall, Strickland filed suit against TIM-CO and Donald Kenneth Joye, d/b/a Joye Painting Services,[2] alleging that he was injured while working on premises owned by TIMCO and that TIMCO’s negligence was the cause of his injuries. Strickland asserted that TIMCO was negligent because the skylights were indistinguishable-from the roof because of their color, could not withstand 200 pounds of perpendicular pressure, and lacked protective guardrails in violation of Occupational Safety and Health Administration (“OSHA”) and industry standards. Strickland also alleged that TIMCO negligently furnished him with inadequate safety equipment, specifi *1006 cally an inadequate fall protection system. Strickland alleges that he was given a safety harness that lacked a device known as a “rope grab” which would have enabled him to control the amount of slack rope and could have prevented his fall.
TIMCO moved for summary judgment contending that no act or omission on TIMCO’s part caused or contributed to Strickland’s accident. TIMCO asserted that Strickland was an employee of an independent contractor, Strickland knew of the existence of the skylights, and Strickland appreciated the potential consequences of stepping on a skylight. After hearing argument from the parties, the trial court granted the motion for summary judgment in favor of TIMCO.

ANALYSIS

A trial court’s grant of a motion for summary judgment is appropriate where there “is no genuine dispute as to any issue of material fact and the moving party is entitled to judgment as a matter of law.” Lomack v. Mowrey, 14 So.3d 1090, 1091 (Fla. 1st DCA 2009). In negligence actions, the question of the duty owed to a plaintiff is always one of law and never one for the jury. Goldberg v. Florida Power & Light Co., 899 So.2d 1105, 1110 (Fla.2005). Accordingly, where a defendant establishes as a matter of law, that no duty is owed to the plaintiff, the trial court may properly grant summary judgment in favor of the defendant. See Jenkins v. W.L. Roberts, Inc., 851 So.2d 781 (Fla. 1st DCA 2003).
Generally, a property owner who employs an independent contractor to perform work on his property will not be held liable for injuries sustained by the employee of an independent contractor during the performance of that work. Ahl v. Stone Southwest, Inc., 666 So.2d 922, 924 (Fla. 1st DCA 1995). However, there are two exceptions to the general rule. An owner can be held hable for damages sustained by an employee of an independent contractor where (1) the property owner actively participates in or exercises direct control over the work; or (2) the property owner negligently creates or negligently approves a dangerous condition. See id. Moreover, the property owner must maintain the premises in a reasonably safe condition for business invitees, including employees of independent contractors. Pertl v. Exit Information Guide, Inc., 708 So.2d 956, 957-58 (Fla. 1st DCA 1997).
Under the first exception to the general rule, “[[liability may be imposed if the owner actively participates and controls the manner in which the work is performed.” Id. “To impose liability on the owner for retention of control over an independent contractor, there must be such right of supervision or direction that the contractor is not entirely free to do the work his own way.” City of Miami v. Perez, 509 So.2d 343, 346 (Fla. 3d DCA 1987).
Strickland argues that the control exception applies here based on TIM-CO’s inspection of the work performed by Joye Painting and by TIMCO’s provision of a safety harness and man lift to Joye Painting.[3] However, mere inspection by a property owner of an independent contractor’s work does not amount to control of the work or active participation by the property owner. See Skow v. Dep’t of Transp., 468 So.2d 422, 424 (Fla. 1st DCA 1985); cf. Boatwright v. Sunlight Foods, Inc., 592 So.2d 261, 263 (Fla. 3d DCA 1991). Further, by providing Joye Paint- *1007 mg with a safety harness for use in their work TIMCO did not participate in, influence, or exercise direct control over the work performed by Joye Painting and its employees. Compare St. Lucie Harvesting and Caretaking Corp. v. Cervantes, 639 So.2d 87, 40 (Fla. 4th DCA 1994) (directing “the independent contractor in regard to the amount of fruit to be harvested and from which grove” did not constitute active control), with Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417, 421 (Fla. 3d DCA 1985) (having “a staff of field supervisors who oversaw, directed and coordinated the construction project,” and a superintendent who made daily progress reports and “sometimes became physically involved in the construction” constitutes active participation).
Under the second exception to the general rule, a property owner may be liable for injuries sustained by an employee of an independent contractor “if the owner performs one or more specific acts of negligence.” Ahl v. Stone Southwest, Inc., 666 So.2d 922, 924 (Fla. 1st DCA 1995). Specific acts of negligence include “negligently creating or negligently approving the dangerous condition resulting in the injury ... to the contractor’s employee.” City of Miami v. Perez, 509 So.2d 343, 346 (Fla. 3d DCA 1987) (citing Conklin v. Cohen, 287 So.2d 56, 60 (Fla.1973)); accord Houk v. Monsanto Co., 609 So.2d 757, 759 (Fla. 1st DCA 1992).
However, a property owner will be held liable for negligence only with regard to those dangers that are not known to the independent contractor or could not have been discovered through the exercise of due care. Florida Power & Light Co. v. Robinson, 68 So.2d 406, 411 (Fla.1953); Peril v. Exit Information Guide, Inc., 708 So.2d 956, 957-58 (Fla. 1st DCA 1997). If the property owner knows that an actual or potential danger exists on the property, the property owner has an affirmative duty to warn the independent contractor engaged to perform work on the property of that dangerous condition or to use ordinary care to furnish protection against the danger. Robinson, 68 So.2d at 411. But where the danger is open and apparent or readily ascertainable, the property owner is under no duty to warn and will not be held liable for injuries sustained by the employee of an independent contractor in performing work under the contract. See Roberts v. Dacra Design Associates, Ltd., 766 So.2d 1184, 1185 (Fla. 3d DCA 2000) (property owner not liable for injury to repairman on construction site who fell on a piece of pipe lying on the ground because repairman should have anticipated the presence of construction materials and could have discovered the potential hazards through a reasonable inspection).
However, even where a dangerous condition is apparent or where the property owner has warned the independent contractor of a dangerous condition existing on the premises, if the employee is injured not in the course of the work the contractor was hired to perform, but rather while the employee is attempting to access the premises to perform that work, courts will analyze the duty of the property owner to the employee of the independent contractor under the separate analysis applied to business visitors, or invitees. In Ahl v. Stone Southwest, Inc., 666 So.2d 922 (Fla. 1st DCA 1995), the employee of the independent contractor, George Ahl was hired to perform maintenance work on machines at the property owner’s paper mill. Id at 923. In preparation for the maintenance work, the property owner’s employees hosed down the machines, covering the floor in a mixture of water, grease, and oil. Id. Ahl noticed the condition of the floor and reported it to his supervisor. Id. Although the supervisor informed the prop *1008 erty owner of the condition of the floors, the property owner did not do anything to remedy it. Id. In order to carry out the assigned task, Ahl placed a ladder in the pool of water next to the machine. Id. While performing his duties, Ahl slipped from the ladder and injured his back. Id. Under those facts, where Ahl accessed the premises and the floor in order to perform work on the machines, the court reversed the summary judgment order and concluded that a fact question remained regarding whether the property owner “committed specific acts of negligence by cleaning the machinery and leaving water and oil on the floor.” Id. at 925; accord Houk v. Monsanto Co., 609 So.2d 757, 759-61 (Fla. 1st DCA 1992).
This court similarly applied a business invitee analysis to determine the duty owed by a property owner to an employee of the independent contractor in Pertl v. Exit Information Guide, Inc., 708 So.2d 956 (Fla. 1st DCA 1997). There, the court reversed the trial court’s grant of summary judgment based on its conclusion that the record was unclear whether the property owner had a duty to warn the employee of an independent contractor of the dangerous condition on the premises, namely skylights located on the roof of a building. 708 So.2d at 957. In that case, the employee of the independent contractor fell through a skylight while painting the roof of a building owned by the property owner. Id. The property owner had contracted with the independent contractor to paint the roof. However, there was no evidence that the contractor knew that the roof contained skylights, that the contractor knew of the location of the skylights, or that the contract between the property owner and the independent contractor required repair, maintenance, or other work on the skylights. Based on those facts, the court held that material issues of fact existed as to whether the property owner had constructive knowledge of the defective skylights and whether the property owner had a duty to warn the contractor of the skylights. Id. at 958.
In contrast, where performance of the contract contemplates that the employee of the independent contractor will have contact or directly work on or maintain the condition on the property which causes the employee injury, courts have determined the property owner’s duty by applying the general rule governing duties owed to independent contractors and their employees, rather than business invitees. For example, in Morales v. Weil, 44 So.3d 173 (Fla. 4th DCA 2010), an independent contractor was injured while demolishing a damaged roof when he stepped through a weakened roof panel. Id. at 175-76. The court noted that the property owner of a damaged roof had no duty to maintain the roof in a reasonably safe condition for the independent contractor because the employee was “injured by one of the incidental hazards which made the job dangerous.” Id. at 179; accord Johnson v. Boca Raton Comty. Hosp., Inc., 985 So.2d 593, 596-97 (Fla. 4th DCA 2008) (providing that “[a] landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work”; this is because the landowner “may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly” (citations and internal quotation marks omitted)).
In this case, it is undisputed that TIMCO hired Joye Painting to pressure wash the roof of the hangar and maintain and/or repair the skylights on the roof of the hangar. Joye Painting was specifically employed by TIMCO to repair, maintain, or perform work on the skylights by: (1) applying a sealer compound around the surrounding edges of the skylights; (2) *1009 sealing the panels with a clear fiberglass sealer and (3) sealing the seams of the skylights with mesh tape, compounded over with an elastomeric sealer. Strickland argues that TIMCO should be liable for the injuries he sustained when he fell through one of the skylights and advances several theories to support his claims of negligence. First, Strickland argues that TIMCO negligently approved a dangerous condition based on the appearance and condition of the skylights. Second, Strickland asserts that TIMCO negligently provided Strickland with defective equipment. Each of Strickland’s arguments is without merit.
Strickland contends that the skylights constituted a dangerous condition because they were difficult to locate and detect, even before they were exposed to the chlorine solution used by Joye Painting to pressure wash the roof. However based on the terms of the contract with TIMCO that required maintenance and repair of the skylights, Joye Painting was necessarily on notice of the existence of the skylights. Further, because of the work contemplated under the contract, it was incumbent upon Joye Painting to ascertain the location of the skylights, to determine their condition in order to repair them, and to navigate around them when pressure washing the roof. The danger of falling through the skylights was a recognized risk attendant to performance of work under the contract. Indeed, it is undisputed that Strickland knew he was not to. step on the skylights, was repeatedly warned not to do so by his supervisor, and Strickland himself instructed a new employee to “stay off the skylights.”
Despite his knowledge of the existence and location of the skylights Strickland maintains that TIMCO can be held liable in negligence because the skylights were not in compliance with OSHA Regulation 29 C.F.R. 1910.23(e)(8) because they were not enclosed by protective guardrails and they could not withstand 200 pounds of perpendicular pressure. However, this argument is flawed in two respects. First, the regulation upon which Strickland relies, Part 1910 of Title 29, is a general regulation and does not apply in this case;[4] rather, this regulation is preempted by the specific standards applicable to the construction industry contained in Part 1926 of Title 29. See Ownby v. Tennessee Farmers Co-op. Corp., No. M2008-00878-COA-R3-CV, 2009 WL 1392574, at *5 (Tenn.Ct.App. May 18, 2009) (“Under the OSHA regulatory scheme, the general industry standards apply to a working situation unless preempted by industry-specific standards.”); 29 CFR § 1910.12(a) (providing that Part 1926 applies to construction work). The work performed under the contract between TIMCO and Joye Painting is instead governed by the regulations pertaining to the construction industry because construction is defined to include painting. See 29 CFR § 1910.12(b). Second, the plain language of Part 1910.23 demonstrates that it only applies to walking-working surfaces and is not applicable to skylights on roofs. Cf. 29 C.F.R. § 1910.23. Strickland’s argument that the *1010 skylights were defective in their design because they failed to withstand 200 pounds of perpendicular pressure is insufficient to establish the existence of disputed material facts because Strickland fails to allege TIMCO knew or should have known of this alleged defect in the skylights which was latent and not readily ascertainable.
We, therefore, reject each of Strickland’s arguments that the appearance or condition of the skylights was a dangerous condition created or approved by TIMCO. The danger of falling through the skylights was an obvious hazard in light of Strickland’s knowledge that the skylights existed and Joye Painting’s obligation under the contract to repair and maintain them. Moreover, TIMCO plainly had no duty to warn Strickland of the obvious hazard or danger posed by the skylights since that hazard was an integral part of the work that Joye Painting was hired to perform.
Strickland also asserts that TIM-CO was negligent when it provided him with a safety harness not equipped with a rope grab and when it permitted Joye Painting’s employees to use its man lift to access the roof. Courts have found that a property owner may be liable in negligence where the owner fails to use reasonable care when furnishing an employee of an independent contractor with tools or equipment to use in performing work under the contract. See Green v. Sansom, 41 Fla. 94, 25 So. 332, 335-36 (1899); Ortiz v. Lorie, 921 So.2d 868, 870 (Fla. 4th DCA 2006); Tillery v. Standard Sand & Silica Co., 226 So.2d 842, 845 (Fla. 2d DCA 1969).
Here, although the parties dispute whether Strickland was wearing a safety harness furnished by TIMCO at the time of the accident, there is no record evidence that the safety harness or man lift were, in and of themselves, dangerous or defective. Rather, Strickland argues that when TIM-CO furnished the safety harness to Joye Painting for use by its employees TIMCO was also obliged to equip the safety harness with a “rope grab.” But not only was TIMCO under no obligation to furnish the independent contractor or its employees with the equipment necessary to perform the job properly and safely, cf. section 440.02(15)(d)(l)a.(I), Florida Statutes, (providing that one of the factors in determining whether an individual is an employee or an individual contractor is whether the individual has their own equipment); 4139 Mgmt. Inc. v. Dep’t of Labor & Employment, 763 So.2d 514, 518 n. 1 (Fla. 5th DCA 2000) (observing that “an owner can furnish some tools necessary without jeopardizing the independent contractor status of its workers”), the undisputed record reflects that Mr. Joye knew of the danger of his employees using safety harnesses not equipped with rope grabs while working on the roof, and in fact TIMCO, on numerous occasions, warned Mr. Joye of this danger. Because Strickland has not alleged that either the safety harness or man lift was dangerous or otherwise defective, TIMCO cannot be found negligent because it furnished Joye Painting and its employees a safety harness and a man lift, especially where TIMCO specifically warned Joye Painting of the hazard of not using rope grabs while working on the roof.
Because there is no triable issue of material fact regarding TIMCO’s liability as a property owner to Strickland under the facts of this case, the trial court properly granted summary judgment in favor of TIMCO.
AFFIRMED.
WOLF and PADOVANO, JJ., concur.

. Triad International Maintenance Corporation is a wholly-owned subsidiary of TIMCO Aviation Services, Inc.; these entities will be collectively referred to as TIMCO.

. The record reflects that at the time of Strickland’s accident, Joye Painting had not secured workers’ compensation coverage for its employees. Additionally, soon after the accident, Joye Painting, a sole proprietorship owned by Mr. Joye, ceased operations and entered into bankruptcy.

. With respect to the safety harness, Strickland also advances the alternative theory that TIMCO was negligent when it provided him with a safety harness not equipped with a rope grab; this theory is addressed later in the opinion.

. Strickland's expert witness testified that this regulation applied to the work under contract in this case. However, such testimony does not raise an issue of fact because the determination of the application of federal regulation is a legal question and not a proper matter for expert testimony. Cf. In re Estate of Williams, 771 So.2d 7, 8 (Fla. 2d DCA 2000); Lee County v. Barnett Banks, Inc., 711 So.2d 34, 34 (Fla. 2d DCA 1997); T.J.R. Holding Co. v. Alachua County, 617 So.2d 798, 800 (Fla. 1st DCA 1993); Ownby v. Tennessee Farmers Coop. Corp., No. M2008-00878-COA-R3-CV, 2009 WL 1392574, at *5 n. 2 (Tenn.Ct.App. May 18, 2009).