MURPHY, M., Associate Judge.
Laura Phillips, both individually and as guardian for her husband, Ronald Phillips (individually “Phillips”), and her children, Brieanna Phillips, Chance Phillips, and Wyatt Phillips (collectively “Appellants”), timely appeals three summary-judgment orders in favor of Republic Financial Corporation (“Republic”), Timothy Fischer (“Fischer”), American Manufacturing & Machine, Inc. (“American Manufacturing”), and Don Buckner (“Buckner”) (collectively “Appellees”). After Phillips fell through a warehouse’s painted-over skylight, Appellants brought suit, alleging Ap-pellees had control over the warehouse and breached a duty to warn of a latent defect — the skylight’s painted-over condition. On appeal, Appellants argue that the trial court erred when it entered summary judgments for Appellees and held (1) Ap-pellees had no duty to warn, (2) Appellants failed to pierce the corporate veil, and (3) Appellees did not have control over the warehouse. We reverse, holding summary judgment for Buckner, the owner of the *323 warehouse, was improper because the question of whether a defect was latent presents a genuine issue of material fact. However, we affirm the summary judgment in favor of Fischer, Republic, and American Manufacturing because they did not exercise control sufficient for a premises-liability claim.
In 2000, Buckner purchased land and the warehouse. Soon after, Buckner leased the property to his company, American Manufacturing, to make industrial vacuum equipment under the brand name Vac-Tron. Between 2000 and 2008, American Manufacturing paid for repairs and painting of the warehouse’s roof. In 2008, Buckner terminated American Manufacturing’s lease and sold a sixty-six percent interest in American Manufacturing to Vac-Tron Holding, Inc., a newly formed subsidiary of Republic Private Equity I, LLP, a company owned by Republic. Under the terms of the contract, a new company was created called Vac-Tron Equipment, LLC (“Vac-Tron Equipment”). In the deal, American Manufacturing’s assets were transferred to Vac-Tron Equipment, and American Manufacturing took a thirty-three percent interest in Vac-Tron Equipment. Buckner then leased the warehouse to Vac-Tron Equipment. The lease provided that Vac-Tron Equipment was responsible for repairs to the property other than “maintenance, repair or replacement costs in excess of $2,500.” Maintenance, repair, or replacement costs in excess of $2,500 remained Buckner’s responsibility and required his approval prior to initiation. Since 2008, in addition to being the sole owner and CEO of American Manufacturing, Buckner remained the slole owner of the property, and he was the CEO at Vac-Tron Equipment.
Republic’s connection to the property is set forth in a financial services agreement with Vac-Tron Equipment. The agreement stated that Republic would provide Vac-Tron Equipment with “certain management and financial advisory services ...,” assist with accounting and legal issues, and advise on management and financial operations. The agreement further provided that Republic was an independent contractor, that Vac-Tron was not obligated to follow any advice or recommendation, and that management, policies, and operations were Vac-Tron’s sole responsibility. Fischer, a board member on Vac-Tron Equipment’s board of directors and a Republic employee, was paid by Republic for his consultation work to Vac-Tron Equipment. However, at the time of the instant incident, Fischer was no longer on Vac-Tron Equipment’s board of directors.
In 2010, Vac-Tron hired a roofing repair company owned by Phillips to work on the warehouse’s corrugated metal roof. The contract required that Phillips clean and paint the roof and clean and caulk existing skylights. Phillips hired Brad Short (“Short”) to assist with the project. Both Phillips and Short walked the roof for measurements before contracting to perform the work. The roof contained skylights and had very little pitch. The roofs existing paint appeared aged. The skylights were visible from the roof and were made from corrugated fiberglass panels with a corrugation pattern that matched the metal roof. Neither Phillips nor Short attempted to view the skylights from within the warehouse or map the skylights before performing work on the roof.
In July 2010, Phillips was seriously injured when he fell through a painted-over skylight as he started the work his company was hired to perform. The skylight that Phillips fell through was painted the same color as the metal panels. When viewed from the roof, the skylight was indistinguishable from the metal panels.
*324 After the injury, Short was shown photographs from within the warehouse of the warehouse’s roof, including the existing skylights. Short acknowledged that the photos showed that the skylights were visible, including the specific skylight that Phillips fell through.[1]
After the injury, Appellants entered into a settlement with Vac-Tron Equipment and Vac-Tron Holdings, Inc. The settlement released employees and directors from liability. Appellants subsequently filed the instant suit against Buckner, as the owner of the warehouse, American Manufacturing, Fischer, and Republic.[2]
Buckner and American Manufacturing moved for summary judgment, arguing the painted-over condition was a patent defect and that American Manufacturing did not exercise control over the property. In a separate motion, Republic argued there was no duty to warn and that Appellants failed to pierce the corporate veil. Finally, in a separate motion, Fischer argued that he was released from liability in the settlement, there was no duty to warn, and he did not exercise control over the property. Fischer joined Republic’s motion, and Republic joined Fischer’s motion. The trial court only ruled on American Manufacturing and Buckner’s motion for summary judgment and on Republic’s motion for summary judgment. The trial court did not rule on Fischer’s separate motion — the only ground the trial court considered for Fischer was Republic’s argument that Appellants did not pierce the corporate veil.
“A trial court’s ruling on a motion for summary judgment is subject to a de novo standard of review.” Baxter v. Northrup, 128 So.3d 908, 909 (Fla. 5th DCA 2013) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)). “Summary judgment is appropriate only where ‘there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.’ ” MacClatchey v. HCA Health Servs. of Fla., Inc., 139 So.3d 970, 972 (Fla. 4th DCA 2014) (quoting Fla. R. Civ. P. 1.510(c)). “The burden is on the moving party to show ‘conclusively the absence of any genuine issue of material fact and the court must draw every inference in favor of the party against whom a summary judgment is sought.’ ” Id. (quoting Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985)). “If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.” Id. (quoting Moore, 475 So.2d at 668).
DUTY OWED TO AN INDEPENDENT CONTRACTOR
Generally, “one who hires an independent contractor is not liable for injuries sustained by that contractor’s employees in their work.” Cecile Resort, Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999) (qüoting Van Ness v. Indep. Constr. Co., 392 So.2d 1017, 1019 (Fla. 5th DCA 1981)). In Cecile Resort, this court recognized two exceptions to this general rule. First, an “owner may be held liable if he has been actively participating in the construction to the extent that he directly influences the manner in which the work is *325 performed.” Id. (quoting Conklin v. Cohen, 287 So.2d 56, 60 (Fla.1973)). Second, “an owner owes a business visitor [a] duty” to warn “of latent and concealed perils known to the [owner], or which by the exercise of due care should have been known to him, and which were not known by [the visitor] or which, by the exercise of due care, could not have been known to him.” Id. at 448 (internal quotation marks omitted) (quoting Hall v. Holland, 47 So.2d 889 (Fla.1950)).
Appellants claim that the skylight Phillips fell through was a latent defect in the roof because this single skylight, unlike all the other skylights, was covered with paint and was, therefore, not visible from the roof. Appellants rely primarily on Peril v. Exit Information Guide, Inc., 708 So.2d 956 (Fla. 1st DCA 1997), to support their position that the skylight was a latent defect. In Peril, a contractor was hired to paint a roof, and he fell through a skylight that had been painted over. Id. at 958. Significantly, some of the skylights had been painted over and many of the skylights were difficult to distinguish from the corrugated roof. Id. The first district applied Holland, 47 So.2d 889, reversed the lower court’s order granting summary judgment, and held that the contractor was a “business visitor, or invitee” on the premises. Id. at 957-58. The Peril court held that the defendant owed a duty to warn of latent defects, as follows:
[The building owner owed the independent contractor a duty] to use reasonable care in maintaining the premises in a reasonably safe condition and to give the plaintiff timely notice and warning of latent and concealed perils, known to the defendant or which by the exercise of due care should have been known to him, and which were not known by plaintiff or which by the exercise of due care could not have been known by him.
Id. (quoting Holland, 47 So.2d at 891).
Appellees argue that the first district, in Strickland v. Timco Aviation Services, Inc., 66 So.3d 1002 (Fla. 1st DCA 2011), limited its prior holding in Peril. In Strickland, the contractor was hired to pressure wash the roof and perform repair and maintenance on the skylights. Strickland, 66 So.3d at 1005. While pressure washing the roof, the contractor fell through one of the skylights and claimed that TIMCO was negligent because the skylights were indistinguishable from the roof. Id. The first district recognized that in Peril, there was no evidence that the contractor knew the roof contained skylights or that the contract required skylight repair. Id. at 1008. In Strickland, the contractor had knowledge of the existence and location of the skylights. Id. at 1009. Furthermore, Strickland held that:
The danger of falling through the skylights was an obvious hazard in light of [the independent contractor’s employee’s] knowledge that the skylights existed and [the independent contractor’s] obligation under the contract to repair and maintain them. Moreover, TIMCO plainly had no duty to warn [the independent contractor’s employee] of the obvious hazard or danger posed by the skylights since that hazard was an integral part of the work that [the independent contractor] was hired to perform.
Id. at 1010.
In reaching its conclusion, the first district followed the fourth district’s decisions in Johnson v. Boca Raton Community Hospital, Inc., 985 So.2d 593 (Fla. 4th DCA 2008), and Morales v. Weil, 44 So.3d 173 (Fla. 4th DCA 2010), which both held that a landowner does not have a duty to protect an independent contractor from the hazards of the job that cause the job to *326 be dangerous. In Johnson, the court found that inhaling asbestos was a “usual hazard” incidental to asbestos installation and therefore ruled that the hospital did not owe a duty to warn the independent contractor’s employee of that hazard. Johnson, 985 So.2d at 596. In Morales, the court found that Morales was hired to perform a “dangerous demolition job on a heavily-damaged structure” in which the “dangerous condition of the roof was patently obvious to all.” Morales, 44 So.3d at 179.
Unlike the injured parties in Strickland, Johnson, and Morales, Phillips was not injured due to a fall through a skylight known to exist by him, nor was the dangerous condition of the painted over skylight “patently obvious to all,” nor is falling through a painted-over skylight a “usual hazard” of cleaning and painting a roof or repairing and caulking skylights.
Appellees nonetheless argue that the photographs from within the warehouse of the roof show the painted-over skylight that Phillips fell through was visible, and Phillips could have located the skylight prior to working on the roof. “[A] property owner will be held liable for negligence only with regard to those dangers that are not known to the independent contractor or could not have been discovered through the exercise of due care.” Strickland, 66 So.3d at 1007 (emphasis added) (citing Florida Power & Light Co. v. Robinson, 68 So.2d 406, 411 (Fla.1953)); see also Peril, 708 So.2d at 957-58. Whether searching for skylights solely from the roof is a reasonable inspection, or the exercise of due care, is a jury question. See Kala Invs., Inc. v. Sklar, 538 So.2d 909, 914 (Fla. 3d DCA 1989) (“It is well established that it is ‘peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care.’ ” (quoting Orlando Exec. Park v. Robbins, 433 So.2d 491 (Fla.1983))). Therefore, the trial court erred in granting summary judgment for all Appellees on the issue of duty to warn.
CONTROL OVER THE PROPERTY
“The crux of a cause of action for premises liability is not the ownership of the premises, but the negligence of the possessor in permitting licensees and invitees to come unwarned to an area where they could foreseeably be injured by a dangerous condition which is not readily apparent.” Houssami v. Nofal, 578 So.2d 495, 496 (Fla. 5th DCA 1991); Bovis v. 7-Eleven Inc., 505 So.2d 661 (Fla. 5th DCA 1987). “In cases like this, where the facts involve a leased premises, the extent of responsibility for injuries occurring on the leased premises during the term of the lease depends on the extent the owner of the property maintains control over the premises.” Brown v. Suncharm Ranch, 748 So.2d 1077, 1078 (Fla. 5th DCA 1999). When the landlord and tenant have a lease that expressly sets forth which party has the power to possess and control the property during the term of the lease, the issue of control is a matter of law. See, e.g., Russ v. Wollheim, 915 So.2d 1285 (Fla. 2d DCA 2005) (holding that as a matter of law, a lessor retains a possessory interest or control when a lease provision requires the lessee to obtain prior written approval before lessee can alter or improve property); Colon v. AutoZone Ne., Inc., 148 ConmApp. 435, 84 A.3d 1234, 1237 (2014) (“Although questions of fact ordinarily are not decided on summary judgment, if the issue of control is expressed definitively in the lease, it becomes, in effect, a question of law.” (quoting Fiorelli v. Gorsky, 120 Conn.App. 298, 991 A.2d 1105, 1112 (2010))).
As to summary judgment in favor of Fischer and Republic, we find no *327 reversible error.[3] Pursuant to the Financial Services Agreement, neither Fischer nor Republic had the power to possess or • control the property. The terms of the contract were not in dispute; therefore, we affirm the summary judgment in favor of Fischer and Republic because neither had the power to possess or control the property pursuant to Russ and Colon. We also affirm summary judgment with regard to American Manufacturing.[4] Despite evidence establishing that the company operated in the warehouse until 2008 and paid for two roof repairs in 2009, there was no evidence that American Manufacturing exercised control over the property on the date of the incident, July 8, 2010. Therefore, summary judgment was appropriate with regard to American Manufacturing. See Peril, 708 So.2d at 958 (holding that because the record does not contain any evidence that the previous owner controlled the property on the date of the incident, the previous owner owed no duty).
We reverse, however, because Buckner did not argue in his motion for summary judgment that he, as owner of the property, did not have control.[5] He only argued that summary judgment was appropriate on the duty-to-warn issue. Accordingly, because the issue of control was not raised below, and because the trial court erred when it held Buckner did not have a duty to warn, we reverse the summary judgment for Buckner and remand for further proceedings.
AFFIRMED in Part; REVERSED in Part; and REMANDED.
BERGER, J., concurs.
LAWSON, J., concurs specially, with opinion.

. While the painted-over skylight was visible from inside the warehouse, it looked darker than the other skylights, but Short still recognized it as a skylight.

. On appeal, Appellants do not argue Buckner is liable as a Vac-Tron Equipment employee, recognizing that he was released under the terms of the settlement. Appellants only argue that Buckner is liable as owner of the property.

. Appellants did not sue Republic based upon Republic’s ownership authority; therefore, the trial court erred in requiring the Appellants to pierce the corporate veil. However, the trial court arrived at the right result albeit for the wrong reason.

. Appellants sued American Manufacturing, alleging that Buckner, in his capacity as CEO of American Manufacturing, failed to warn of the painted-over skylight or maintain it in a safe condition. The amended complaint further alleged that American Manufacturing "owned, operated, and/or maintained” the premises on which the warehouse was located.

.Buckner only argued that the settlement released him. Contrary to Buckner’s assertion, the release expressly permitted Appellants to pursue a claim against Buckner in his capacity as owner of the property.