DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

WAL-MART STORES EAST, LP,

Appellant,

v.

JOSEPH JOHNSON,

Appellee.

No. 2D2025-0567

_____

June 24, 2026

Appeal from the Circuit Court for Hillsborough County; Christopher C. Nash, Judge.

Jack R. Reiter and Eric Yesner of GrayRobinson, P.A., Miami, for Appellant.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota; and James W. Holliday and Theodore Karatinos of Holliday Karatinos Law Firm, PLLC, Lutz, for Appellee.

SLEET, Judge.

Wal-Mart Stores East, LP, appeals from a final judgment entered on a jury verdict in favor of Joseph Johnson in Johnson's negligence action against Wal-Mart. Johnson's negligence claim stemmed from injuries he sustained while working as an independent contractor in a Wal-Mart store. On appeal, Wal-Mart makes several arguments, including that the trial court erred in denying its pretrial motion for summary judgment

and subsequent motions for directed verdict that were based on its independent contractor defense. We affirm but write to address the application of the independent contractor defense in the instant case.

FACTS

Johnson was employed as a service technician for D.H. Pace Door Company, an independent contractor with Wal-Mart. As part of that employment, in July 2020, he went to a Wal-Mart store to remove an old manual door and install a new automatic door in the store's order pick-up area. Johnson had installed approximately sixty similar doors at other Wal-Mart stores. Once the old door was removed and the new automatic door was in place, the new door had to be connected to the store's power supply through an existing junction box. Johnson is not a licensed electrician, but it was undisputed at trial that a licensed electrician was not required for the door installation.

At trial, provisions of the National Electric Code (NEC) were introduced into evidence. Johnson's expert Curtis Falany, a forensic electrical engineer, testified that the NEC is "the law of the land . . . if you have a building in Florida" and that "a building like Wal-Mart that is constructed in Florida . . . [is] covered by the [NEC]." Additionally, Joseph Nowikowski, Wal-Mart's expert forensic electrical engineer, agreed that the NEC had been adopted as part of the Florida Building Code.[1] *See* § 553.88(1), Fla. Stat. (2020) ("For the purpose of establishing minimum electrical and alarm standards in this state, the current edition of the following standards are adopted: (1) 'National Electrical Code,' NFPA No. 70 . . . ."). According to expert testimony at trial, the NEC requires that all metal junction boxes contain grounded wires that render the box safe to touch, that all exposed wires within

---

[1] *See* §§ 553.70-.898, Fla. Stat. (2020).

2

junction boxes are "capped" with plastic covers screwed to the end of each wire, and that all junction boxes are "firmly secured to the surface on which [they are] mounted."

The junction box to which Johnson attached the new door was located in a restricted area of the store that could only be accessed by store management with a key card. The Wal-Mart store manager on duty escorted Johnson to the locked room and allowed him access. The manager then deactivated the old door alarms and provided Johnson with the new automatic door and all the electrical components needed to complete the installation. Johnson's last task was to connect the new door to the power supply.

Johnson's normal routine before connecting a new door to the power supply was to ensure that the wires in the junction box were grounded and turned off. Typically, he would do this by turning off the breaker to the box, but he was unable to locate the correct breaker because Wal-Mart's breaker room contained approximately 200 breakers that were not labeled; there was no indication of which breaker corresponded to this particular junction box. And turning off numerous unmarked breakers would disrupt store operations; so Johnson decided to verify the voltage of the wires inside the junction box using a voltmeter. This required his removing the metal cover of the box.

Because the NEC requires a metal junction box to be grounded, it should have been safe for Johnson to touch the exterior cover of the box. Johnson climbed a ladder and removed the screws securing the junction box plate. When he touched the loosened metal cover of the junction box, he was shocked by an electric jolt that caused him to fall from the

ladder to the concrete floor, injuring his head.[2]  After a few minutes, he managed to go back up the ladder to investigate what had happened.  He found that the wires in the box were uncapped and that the grounding wire was not secured.  He capped the wires before calling a D.H. Pace coworker, Mike Goettsch, to come finish the installation job, and then he sought medical attention.

Goettsch testified at trial that he inspected the junction box and that it appeared that Johnson had performed his work correctly and in compliance with D.H. Pace procedures and safety measures.  Goettsch confirmed that he touches junction box exteriors "every day" without incident as part of his work for D.H. Pace and that it should be considered safe to do so.  He confirmed that the junction box in question is located in a locked area accessible only by key card, that the box was "unmounted and hanging loose," and that the grounding wire was not screwed down.

Johnson's expert Falany testified that the ungrounded junction box was "electrically dangerous."  He further testified that touching a junction box "should be as safe as turning on a light switch" and that Johnson "had every right to expect" that the junction box would be grounded and safe to touch.  In Falany's expert opinion, Wal-Mart's junction box was not NEC compliant, and Johnson had complied with industry standards.  Furthermore, Falany testified that "somebody at Wal-Mart knew that box wasn't connected" because "it's Wal-Mart's box [and] Wal-Mart's store."  He added: "Whatever was done was done by or through Wal-Mart.  So someone, somewhere in their system, knew the

---

[2] Johnson testified, "I'm reaching forward to take the cover off, and I'm instantly getting shocked. . . .  I was screaming.  I was trapped in it, but I somehow pushed . . . myself off and the last thing I remember is falling backwards."

box wasn't properly wire nutted and wasn't properly attached to the wall."[3]

Wal-Mart moved for directed verdict at the close of Johnson's case, arguing that Johnson was an independent contractor to whom it did not owe a duty and that Johnson had not established that Wal-Mart had any knowledge of a dangerous condition.[4]  Specifically, counsel for Wal-Mart argued that Johnson's claim was barred by the independent contractor defense because "[n]obody from Wal-Mart told him how to access the junction box.  That was solely . . . Mr. Johnson's thought process and act. . . .  [Wal-Mart] did not control the method by which Mr. Johnson's work [wa]s being done."  The trial court denied the motion.

Wal-Mart subsequently presented the testimony of its expert Nowikowski, who conceded that the junction box should have been grounded so that Johnson could safely touch it.  Additionally, Nowikowski agreed that "[a]s the owner of the premises, Wal-Mart was responsible . . . for providing a safe workplace for Mr. Johnson" and "mak[ing] sure that the metal junction box was grounded and electrically safe."  He also concluded that the junction box was not NEC compliant.

After the jury returned a verdict for Johnson, Wal-Mart renewed its motion for directed verdict, raising the same argument.  The trial court again denied the motion.

---

[3] "Wire nutted" refers to the requirement that live wires be "capped."  Falany testified that a wire nut is "a small insulated device that has a spring on the inside and you can quite literally screw it on a wire."

[4] Wal-Mart had raised this same argument in a pretrial motion for summary judgment that the trial court had denied in an unelaborated order.

On appeal, Wal-Mart maintains that, as a matter of law, a property owner cannot be liable for injuries suffered by an independent contractor who is engaged in work he or she was hired to perform. Wal-Mart maintains that neither recognized exception to this general rule applies. It asserts that Johnson presented no evidence that it exercised significant control over the means and methods of Johnson's work or that it had actual or constructive knowledge of any dangerous condition attendant to the junction box. Wal-Mart therefore argues that the trial court erred in denying its pretrial motion for summary judgment and subsequent motions for directed verdict. We disagree.

## STANDARD OF REVIEW

The denial of a motion for directed verdict is reviewed de novo, *Weston v. Universal Prop. & Cas. Ins.*, 425 So. 3d 638, 642 (Fla. 2d DCA 2025), as is the denial of a motion for summary judgment, *Barber v. Manatee Mem'l Hosp., Ltd. P'ship*, 388 So. 3d 279, 285 (Fla. 2d DCA 2024). "A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party." *Sims v. Cristinzio*, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005). "[T]he party moving for directed verdict 'admits the truth of all the facts stated in the evidence presented and also admits every conclusion favorable to the nonmoving party that a jury might reasonably infer from the evidence.'" *Sec. First Ins. v. Visca*, 387 So. 3d 313, 317 (Fla. 4th DCA 2024) (quoting *Tower Hill Prime Ins. v. Bermudez*, 388 So. 3d 165, 168 (Fla. 3d DCA 2023)).

Similarly, "the trial court should grant summary judgment only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Barber*, 388 So. 3d at 285 (quoting Fla. R. Civ. P. 1.510(a)). "[T]he initial burden

6

is on the movant to establish the absence of any genuinely disputed material fact." *Id.*

## THE INDEPENDENT CONTRACTOR DEFENSE

"The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). As to the duty element, "businesses owe a duty of reasonable care to their invitees to maintain safe conditions." *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 13 (Fla. 2016). This duty is twofold and requires premises owners "to use reasonable care in maintaining property in a reasonably safe condition" and "to warn of concealed dangers that the landowner knows about or should know about and 'which are unknown to the invitee and cannot be discovered by him through the exercise of due care.' " *Ruiz v. Wendy's Trucking, LLC*, 357 So. 3d 292, 301-02 (Fla. 2d DCA 2023) (quoting *Knight v. Waltman*, 774 So. 2d 731, 733 (Fla. 2d DCA 2000)). Accordingly, "the plaintiff 'must show the defendant had actual or constructive notice of the dangerous condition on its premises.' " *Hu v. Hua*, 414 So. 3d 179, 185 (Fla. 4th DCA 2025) (quoting *Eckert Realty Corp. v. Strazzeri*, 396 So. 3d 220, 221 (Fla. 4th DCA 2024)).

Wal-Mart, however, raised the affirmative defense below that it did not owe Johnson "a duty . . . to provide a safe workplace while he was engaged in the performance of contracted work for his employer." It is true that "[g]enerally, a property owner who employs an independent contractor to perform work on [its] property will not be held liable for injuries sustained by the employee of an independent contractor during the performance of that work." *Strickland v. Timco Aviation Servs., Inc.*,

7

66 So. 3d 1002, 1006 (Fla. 1st DCA 2011). "However, there are two exceptions to the general rule." *Id.* The first exception is where "the property owner actively participates in or exercises direct control over the work," i.e., "actively participates and controls the manner in which the work is performed." *Id.* (quoting *Ahl v. Stone Sw., Inc.*, 666 So. 2d 922, 924 (Fla. 1st DCA 1995)).

The second exception applies where "the property owner negligently creates or negligently approves a dangerous condition." *Id.* This exception is only triggered where the property owner has actual or constructive knowledge of the dangerous condition. *See Fuentes v. Sandel, Inc.*, 189 So. 3d 928, 932 (Fla. 3d DCA 2016) ("The second exception applies where the property owner fails to warn the contractor about concealed dangers not inherent in the work *of which the owner had actual or constructive knowledge* and which were unknown to the contractor or could not have been discovered through due care." (emphasis added)); *cf. Eckert Realty Corp.*, 396 So. 3d at 221 ("[T]o be liable, a property owner must still have superior knowledge, either actual or constructive, to the plaintiff concerning any dangerous conditions on the property." (quoting *Di Mare & Drews, Inc. v. Kerrigan*, 810 So. 2d 1066, 1070 (Fla. 4th DCA 2002) (Warner, J., dissenting))).

ANALYSIS

In this case, the second exception bars Wal-Mart's use of the independent contractor defense to avoid its duty to Johnson. Johnson presented sufficient evidence to support that Wal-Mart had constructive knowledge of the dangerous junction box condition that it negligently created or negligently approved. "A premises owner has constructive knowledge of a hazard when, if he exercised reasonable care, he would have known of the hazard." *Hu*, 414 So. 3d at 185 (quoting *Eckert Realty*

8

*Corp.*, 396 So. 3d at 221)). Furthermore, "[c]onstructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it." *Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 965 (Fla. 3d DCA 2018); *see also Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 320 (Fla. 2001).

Johnson testified that the wires in Wal-Mart's junction box were not properly capped and grounded, a fact he unfortunately did not—and could not—discover until he touched the exterior of the electrified box in order to open it and see inside. *See Pratus v. Marzucco's Constr. & Coatings, Inc.*, 310 So. 3d 146, 149 (Fla. 2d DCA 2021) ("The test for [whether a danger is open and obvious] 'is not whether the object is obvious, but *whether the dangerous condition of the object is obvious*." (quoting *De Cruz-Haymer v. Festival Food Mkt., Inc.*, 117 So. 3d 885, 888 (Fla. 4th DCA 2013))). Both Falany and Nowikowski agreed that the junction box was not NEC compliant, that wires in any junction box should be capped and grounded, and that Johnson should have reasonably been able to expect that the box was safe to touch.[5]

It is also undisputed that Wal-Mart was responsible for the construction of its store and the original installation of all the electrical junction boxes within that store. Johnson presented evidence that the junction box involved in his accident was located in a locked area

---

[5] Our disposition is based on the conclusion that Johnson's evidence alone precluded a directed verdict. *See Martinez v. Lobster Haven, LLC*, 320 So. 3d 873, 880 (Fla. 2d DCA 2021) ("[A] motion for a directed verdict should only be granted where the '*non-moving party's case* is devoid of probative evidence.' " (emphasis added) (quoting *Houghton v. Bond*, 680 So. 2d 514, 522 (Fla. 1st DCA 1996))). We note, however, that Wal-Mart's expert did not contradict Johnson's expert on certain points.

accessible only by key card and only by Wal-Mart personnel. The store manager on duty at the time of the incident had no knowledge of any outside electrical work being performed in that locked area during the six years she had been working at that store. Additionally, Wal-Mart had not labeled the approximately 200 breakers in its locked breaker room so that Johnson could turn off the power to the specific junction box confidently and without potentially disrupting power throughout the store. Johnson testified that he therefore attempted to verify the voltage of the wires inside the junction box using a voltmeter. Both experts testified that when a junction box is properly grounded, such a procedure is safe.

This evidence supports that a dangerous condition existed on Wal-Mart's premises for an extended period of time and that had Wal-Mart "exercised reasonable care, [it] would have known of th[is] hazard." *See Hu*, 414 So. 3d at 185; *see also Khorran*, 251 So. 3d at 965 ("Constructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it."). Furthermore, the record supports that the dangers concealed within the junction box were not inherent to the work that Johnson was hired to perform. He was hired to install an automatic door, not repair a faulty junction box, and the unrefuted testimony of both expert witnesses, Johnson, and Goettsch established that Johnson had every reason to believe that the exterior of the junction box was safe to touch. *Cf. Strickland*, 66 So. 3d at 1005, 1009 (holding that property owner was not liable to an independent contractor's employee who fell off a roof after tripping on a skylight where the independent contractor was hired to "pressure wash the roof . . . and perform repair and maintenance on the

skylights on the roof" and "based on the terms of the contract . . . [the independent contractor] was necessarily on notice of the existence of the skylights" and had to "ascertain the location of the skylights" to perform the contract).[6]

CONCLUSION

Because the evidence supports that one of the exceptions to the independent contractor defense applies, Wal-Mart cannot rely on that defense to avoid the duty it owes—as a business owner—to invitees to maintain safe conditions on its premises. The trial court properly denied Wal-Mart's motions for summary judgment and directed verdict.[7]

---

[6] We note that the cases cited by Wal-Mart for the proposition that premises owners do not owe a duty to independent contractors performing work on their property are factually distinguishable. In these cases, the dangerous conditions were open and patently obvious to the injured party or the injured party was warned of the dangerous condition, verbally or by contract. *See Fuentes*, 189 So. 3d at 928 (involving a property owner who warned the plaintiff of the dangerous condition); *Sterling Fin. & Mgmt., Inc. v. Gitenis*, 117 So. 3d 790 (Fla. 4th DCA 2013) (involving injury to plaintiff who used his own employer's equipment in a way it was not intended to be used); *Strickland*, 66 So. 3d at 1010 ("The danger of falling through the skylights was an obvious hazard in light of [plaintiff]'s knowledge that the skylights existed . . . ."); *Morales v. Weil*, 44 So. 3d 173, 179 (Fla. 4th DCA 2010) ("[T]he dangerous condition of the roof was patently obvious to all. [Plaintiffs] were in no better position than [defendant] to assess the level of danger that the job posed."); *Roberts v. Dacra Design Assocs.*, 766 So. 2d 1184, 1185 (Fla. 3d DCA 2000) ("The plaintiff in this case[, an air condition repairman who slipped on debris in a poorly lit area of a building that was under construction,] concedes that the lighting condition was obvious and that it was his responsibility to provide the lighting necessary for the work.").

[7] Wal-Mart also argues on appeal that the trial court erred in denying its requested jury instruction on the independent contractor defense, but we conclude that Wal-Mart has not established that such was reversible error. *See Citizens Prop. Ins. v. Jaehnig*, 404 So. 3d 526, 526 (Fla. 3d DCA 2024) ("[A] verdict will not be set aside merely because

Affirmed.

LUCAS, C.J., and ROTHSTEIN-YOUAKIM, J., Concur.

_____

Opinion subject to revision prior to official publication.

---

the court failed to give instructions which might have been properly given; to warrant reversal of a judgment for an erroneous instruction, the court must be satisfied that the jury was misled; the refusal to give a proper instruction which would have availed the party [of] nothing is harmless error." (quoting *Cruz v. Plasencia*, 778 So. 2d 458, 461 (Fla. 3d DCA 2001))).