TORPY, C.J.
Charles N. Baxter, Jr., appeals a final judgment entered in favor of Tod Northrup, D.O., and Flagler Hospital, Inc. (collectively “Appellees”) in a medical malpractice case. He contends that the trial court erred by entering summary judgment in favor of Appellees on their statute of limitations defenses. Concluding that a question of fact exists as to when Mr. Baxter knew or should have known of the possibility of medical negligence, we reverse.
Dr. Northrup performed left hip replacement surgery on Mr. Baxter at Fla-gler Hospital on November 2, 2004. The next day, Mr. Baxter noticed that his leg was numb and that he had a foot drop. Dr. Northrup and medical staff told him that these symptoms would abate after a period of physical therapy. Based upon these assurances, Mr. Baxter continued treatment with Dr. Northrup. When Mr. Baxter’s symptoms did not improve, on April 6, 2005, Mr. Baxter saw neurologist Dr. Potter, who advised him that his neurological deficit was likely permanent. Mr. Baxter thereafter sought legal counsel, served a statutory notice of intent on June 25, 2007, and filed the instant malpractice action.
Appellees moved for summary judgment, asserting that the notice of intent and lawsuit were untimely because the statute of limitations, with tolling, had expired on February 1, 2007. They argued that the statute of limitations began to run on November 8, 2004, the day when Mr. Baxter became aware that he had, foot drop. The trial court agreed. It granted summary judgment in favor of Appellees, concluding that the statute of limitations commenced to run on November 2, 2004, “upon the Plaintiffs discovery of the injury itself....”
A trial court’s ruling on a motion for summary judgment is subject to a de novo standard of review. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). It is axiomatic that “[s]ummary judgment is proper [only] if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Id. When expiration of the statute of limitations is the basis of a summary judgment motion, the movant has the burden of showing “conclusively that there was no genuine issue of fact that the statute of limitations had expired before the filing of the [complaint].” Green v. Adams, 343 So.2d 636, 637 (Fla. 4th DCA 1977). An appellate court must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party; if the slightest doubt exists, summary judgment must be reversed. Delta Fire Sprinklers, Inc. v. OneBeacon Ins. Co., 937 So.2d 695, 698 (Fla. 5th DCA 2006).
*910 Pursuant to section 95.11(4)(b), Florida Statutes, an action for medical malpractice must be commenced “within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence.[1] The dispositive question in this case is when Mr. Baxter discovered or should have discovered that there was a reasonable possibility that medical malpractice caused his injury. The trial court determined that this occurred when Mr. Baxter discovered the foot drop on either the day of or the day following his surgery. To sustain this conclusion under our de novo review standard, we must agree that “[t]he nature of the injury, standing alone, .... [was] such that it communicate[d] the possibility of medical negligence.... ” Tanner v. Har-tog, 618 Solid 177, 181 (Fla.1993). In other words, we must determine that the nature of the injury itself communicated to the lay patient an injury caused by malpractice, rather than one naturally caused. See Cunningham v. Lowei~y, 724 So.2d 176, 179 (Fla. 5th DCA 1999) (involving delay in diagnosing staphylococcus infection during treatment for back pain). Where the injury is “obviously” the product of malpractice, such as when the wrong limb is amputated, the statute will commence to run when the patient discovers the injury. Rodriquez v. Saenz, 866 So.2d 184, 187 (Fla. 5th DCA 2004). This is because the injury “speaks for itself,” communicating both the fact of injury and the fact of malpractice. Cunningham, 724 So.2d at 179. In less than obvious cases, the resolution of this question is “very often” a question of fact for the jury. Id. (citing Tanner, 618 So.2d at 182).
Here, we cannot conclude as a matter of law that Mr. Baxter’s post-surgical symptoms were such that medical malpractice was a reasonable possibility. Dr. Northrup himself testified in his deposition that foot drop is a known complication of total hip replacement surgery that is specifically discussed with the patient before surgery. According to Dr. Northrup’s interrogatory answers, “[a]n appreciable percentage of foot-drop symptoms occurring after hip replacement cannot be assigned to a cause.” As of the date of his deposition, Dr. Northrup still did not know the cause of Mr. Baxter’s foot drop. In the opinion of one of the defense experts, a physician, Mr. Baxter’s foot drop was “a known and accepted risk of this particular surgery, and it was not due to any negligence on the part of the defendants.” It is difficult to envision how a layperson can be charged with the knowledge that particular symptoms suggest an act of negligence when medical professionals, who scrutinize the case with the clarity of hindsight, conclude that the symptoms are the product of unexplained, natural causes.
In deciding this issue, the jury can also take into consideration the post-operative treatment and discussions that occurred. Mr. Baxter specifically pled that he “relied upon the representation of the defendants as to the plaintiffs post-operative surgical symptomatology as being the normal and customary sequelae of the subject surgical procedure.” This allegation was not negated in the application for summary judgment, and Mr. Baxter’s sworn interrogatory answers support this assertion. As we have previously observed:
[I]t would seem that if the law is to place on a layperson ... the burden of appreciating malpractice at ... [a par *911 ticular moment when the statute is said to commence], then the law must by rights impose on the physician a concomitant duty of disclosure.
Cunningham, 724 So.2d at 180-81.
In Cunningham, the patient’s diagnosis and treatment for a staphylococcus infection were delayed by several months while he was being treated for a back injury. The physician continued to treat the patient for his back injury after the infection was diagnosed and the patient ultimately died as a result of a pulmonary embolus. Id. at 177. At one point following the patient’s death, the physician told the patient’s wife that “there is some things that you ... that just can’t be explained,” implying that the death was unpreventable and not the result of negligence. Id. at 179. Later, the same physician argued that the statute began to run as soon as the infection was discovered. We held that summary judgment was improper. We quoted with approval the concurring opinion of Justice Kogan in Tanner:
Where plaintiffs have little or no special expertise and were told that the untoward event was “natural” or non-negligent, then I can envision only a few extraordinary situations in which the statute will begin to run on the date of the event itself. This in part embodies an estoppel concept: Medical providers or their agents who convince patients that an untoward medical event was “natural” and non-negligent will rarely be permitted to deny that same representation is correct for purposes of statutes of limitation. Even where medical providers avoid making any such representations, however, the court still must look at the issue from the perspective of the actual plaintiffs, in light of their training and skill.... [W]e have no indication that the [family] possessed other training or skills that might have led them to suspect a likelihood of negligence based on the facts before them....
Cunningham, 724 So.2d at 180 (quoting Tanner, 618 So.2d at 185 (Kogan, J., concurring)). We concluded:
It would be both fair and desirable in order for a physician to claim the benefit of the running of the statute of limitations in a misdiagnosis case from the moment of the correct diagnosis, that the physician who continues to treat the patient be required to disclose to the patient or the patient’s representative the fact of and the possible significance of the misdiagnosis. Had Dr. Lowery done so, the statute clearly would have begun to run from the moment of his disclosure.
Id. at 182.
More recently, our sister court embraced Cunningham and Justice Kogan’s concurring opinion in the context of a surgical negligence claim. In Cohen v. Cooper, 20 So.3d 453 (Fla. 4th DCA 2009), following cosmetic surgery, the plaintiff experienced excruciating pain in her eye. For several months after the surgery, the physician continued to treat the plaintiff and assure her that her pain was “normal” and that her recovery would be slow. Id. at 454. At some point when the symptoms did not improve, the plaintiff initiated a malpractice claim. The physician successfully argued to the trial court that the post-operative pain was the event that commenced the running of the statute of limitations. Id. The Fourth District reversed, concluding that issues of fact precluded summary judgment on the statute of limitations defense. It stated that “[a]s a result of [the physician’s] assurances that [the plaintiffs] eye condition would improve, [the physician] cannot now claim that [the plaintiff] should have known three days after the initial surgery that *912 her pain was the result of his negligence.” Id. at 456.
Here, Mr. Baxter claims that similar assurances and non-disclosure dispelled the specter of negligence. Borrowing once again from Cunningham, we conclude:
In this case, ... [Mr. Baxter], an ordinary person unschooled in medicine, was left to figure malpractice out for [himself]. In such a case, a jury should decide whether what [he] knew ... was enough to conclude that the statute of limitations had expired when the suit was filed. A jury will have to sift through this evidence and determine where the truth lies.
724 So.2d at 181.
Finally, we have not overlooked Appellees’ argument that, alleged representations notwithstanding, the statute commenced to run at the latest on the last day Mr. Baxter treated with Dr. Northrup (March 25, 2005) rather than when Mr. Baxter learned of the permanent injury from Dr. Potter (April 6, 2005). Appellees argue that this is significant because, if the statute commenced to run on March 25, the notice of claim was received two days late and accordingly did not serve to toll the limitations period. Although this was not the basis upon which the trial court granted summary judgment, Appellees advance this argument as an alternative basis to affirm. We reject this argument for two reasons. First, the tolling period commences when the notice is served in accordance with Florida Rule of Civil Procedure 1.650(d)(1). Boyd v. Becker, 627 So.2d 481 (Fla.1993), upon which Appellees rely, only addresses the commencement of the period within which suit must be filed following the service of the notice. Boyd resolved a rule conflict and effected a sua sponte amendment to rule 1.650(d)(3), to provide that suit must be filed within a certain period after the notice is “received.” No change was made to rule 1.650(d)(1), which merely mandates that service of the notice of intent by certified mail must be accomplished before expiration of the statute of limitations. Second, even assuming that the tolling period did not commence until receipt of the notice, there is nothing in this record to conclusively establish that Mr. Baxter learned anything on March 25 (or anytime before April 6) to alert him to the possibility of malpractice. Though Mr. Baxter’s suspicions might have been mounting throughout the period following his surgery, this alone does nothing to pinpoint, as a matter of law, a definitive start date for the commencement of the running of the statute. This is a question for the jury, not appropriate for summary judgment.
REVERSED and REMANDED.
WALLIS, J., concurs.
GRIFFIN, J., dissents without opinion.

. Sections 766.104 and 766.106, Florida Statutes, provide for tolling of the statute of limitations under certain circumstances.