IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JARRETT OLSEN,

        Appellant,

  v.

Case No.  5D22-147
LT Case No. 2018-CA-002110

FIRST TEAM FORD, LTD D/B/A
AUTONATION FORD SANFORD,
A FLORIDA LIMITED PARTNERSHIP,

        Appellee.
_____/

Opinion filed April 21, 2023

Appeal from the Circuit Court
for Seminole County,
Jessica J. Recksiedler, Judge.

Dimitrios A. Peteves and Bryan S. Gowdy, of Creed & Gowdy, P.A., Jacksonville, and Carolyn Salzmann and Jennifer Karr, of Legally Pink Law, PLLC, Orlando, for Appellant.

Hinda Klein, of Conroy Simberg, Hollywood, for Appellee.

BOATWRIGHT, J.

Appellant, Jarrett Olsen, appeals the trial court's entry of final summary judgment in favor of Appellee, First Team Ford, LTD d/b/a Autonation Ford Sanford, a Florida Limited Partnership ("the Dealership"). Appellant argues the trial court's entry of final summary judgment was improper due to the existence of a genuine dispute of material facts. We agree and therefore reverse the entry of summary judgment and remand for further proceedings.

## Background

Ryan Matthews ("Mr. Matthews") is the general manager of the Dealership, and he oversees all departments of the Dealership, including its service department. On December 21, 2016, Mr. Matthews drove his wife's vehicle, a Chevy Tahoe ("Tahoe"), into the Dealership. While at the Dealership, Mr. Matthews executed a document entitled "Loaned Vehicle Agreement" in order to drive home a Ford Expedition ("Expedition") owned by the Dealership. Mr. Matthews left the Dealership in the Expedition, and, on his drive home, he got into an accident with Appellant.

As a result of the accident, Appellant filed a complaint against Mr. Matthews and the Dealership, alleging a negligence claim against Mr. Matthews and a vicarious liability claim against the Dealership under Florida's Dangerous Instrumentality Doctrine. Appellant settled with Mr. Matthews, and the case proceeded solely against the Dealership.

2

In his deposition, Mr. Matthews stated that, on the day in question, he brought the Tahoe into the Dealership to get the oil changed, but he admitted that the oil was never changed. He also stated that he and his wife were thinking about purchasing an Expedition, as the lease on the Tahoe was close to the end, and he wanted to see if an Expedition would fit in his garage. As a result, Mr. Matthews testified that his intention in executing the Loaned Vehicle Agreement was to take the Expedition home overnight and show his wife so she could decide whether she wanted to buy the vehicle.

However, later in Mr. Matthews' deposition, he tried to clarify his reason for executing the Loaned Vehicle Agreement. Mr. Matthews asserted that if the oil change had been completed, he would not have driven the Expedition home that day and instead would have brought his wife to the Dealership to show her the vehicle. Thus, Mr. Matthews alleged a dual purpose for executing the Loaned Vehicle Agreement: (1) he needed a vehicle to drive as the oil change had not been completed on his Tahoe; and (2) he was interested in test driving the Expedition.

In the deposition of the Dealership's service manager, further testimony was elicited that cast doubt on whether Mr. Matthews' Tahoe was actually brought in for service. The service manager did not work for the Dealership at the time of this incident; thus, he had no personal knowledge

as to whether Mr. Matthews brought the Tahoe in for servicing. The service manager for the Dealership testified that service records are kept in the normal course of business when a vehicle is brought in for servicing. These records would have been kept at the time Mr. Matthews alleged that he brought the Tahoe in for servicing. However, when he was directly asked whether Mr. Matthews brought in the Tahoe on the date of the incident, the service manager was not able to verify that information. Furthermore, no records were ever produced by the Dealership evidencing that Mr. Matthews brought his Tahoe in for servicing. The reason for this is that apparently there was not a record of Mr. Matthews bringing his vehicle in for servicing, as the Dealership's counsel conceded during the summary judgment hearing that there was no "service order."

After discovery was completed, the Dealership responded to Appellant's complaint with a motion for summary judgment, arguing Appellant's claims were barred by the Graves Amendment, 49 U.S.C. § 30106. In particular, the Dealership argued that the Graves Amendment shields the owner of a rented or leased vehicle from damages caused by the vehicle while it is leased or rented. See 49 U.S.C. § 30106(a). The Dealership asserted that it rented the Expedition to Mr. Matthews while his vehicle was being serviced and noted that it routinely provides loaner

4

vehicles to customers, like Mr. Matthews, while their vehicles are being serviced.

Appellant filed a cross-motion for summary judgment and an opposition to the Dealership's motion for summary judgment. In his opposition to the motion for summary judgment, Appellant argued that Mr. Matthews' use of the Expedition was solely for a test drive and that the Tahoe was never actually serviced on the day of the accident. Appellant further contended that any intent by Mr. Matthews to have his vehicle serviced was undermined by inferences drawn from the record. Thus, Appellant asserted that because the Graves Amendment does not apply to gratuitous test drives, a genuine dispute of material facts existed which precluded summary judgment in favor of the Dealership.

The trial court held a hearing on both parties' motions for summary judgment. After the hearing, the trial court entered an order granting the Dealership's motion for summary judgment and then subsequently amended its order. In its amended final judgment, the trial court specifically found that there were no genuine disputes of material fact as to the following: (1) The Dealership operates a vehicle service department, and it provides short term rental vehicles to customers who bring their vehicle to the service department; (2) Mr. Matthews was an employee of the Dealership, and was

5

also a customer of the Dealership, when he brought his Tahoe to the Dealership's service department to be serviced (i.e., to undergo an oil change); (3) At the time he dropped his Tahoe off for service, Mr. Matthews executed a Loaned Vehicle Agreement with the Dealership to secure a loaner vehicle; (4) Mr. Matthews was provided a short term rental/loaner vehicle, the Expedition, pursuant to the Loaned Vehicle Agreement while his Tahoe was to be serviced; (5) Mr. Matthews was driving the Expedition, while his Tahoe was at the Dealership's service department, when he was involved in a motor vehicle collision with Appellant; and (6) Mr. Matthews' vehicle never underwent service on the day of the accident.

Based on these findings, the trial court found Appellant's vicarious liability claim against the Dealership to be barred by the Graves Amendment. In particular, the trial court found that the Dealership had rented the Expedition to Mr. Matthews in exchange for his agreement to have his vehicle serviced at the Dealership. The trial court reasoned that even though Mr. Matthews did not have his Tahoe serviced, it was his intent to have the Tahoe serviced that day which determined that he rented the Expedition under the Graves Amendment. Thus, the trial court ruled this exchange constituted a valid rental under the Graves Amendment to shield the Dealership from liability.

6

On appeal, Appellant asserts that the trial court erroneously granted summary judgment when there was a genuine dispute of material fact as to whether Mr. Matthews intended to have his Tahoe serviced at the Dealership. The Dealership, on the other hand, argues there are no genuine disputes as to any material fact. We agree with Appellant.

## Analysis

A trial court's ruling on a motion for summary judgment is subject to a de novo standard of review. Baxter v. Northrup, 128 So. 3d 908, 910 (Fla. 5th DCA 2013) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)). To prevail on a motion for summary judgment, the movant must show that (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). When determining if there is a genuine dispute of material fact, "[t]he court views the evidence in a light most favorable to the non-moving party, and a genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for that party." Welch v. CHLN, Inc., 48 Fla. L. Weekly D583d (Fla. 5th DCA Mar. 17, 2023) (citing Baum v. Becker & Poliakoff, P.A., 351 So. 3d 185, 189 (Fla. 5th DCA 2022)).

In amending Florida Rule of Civil Procedure 1.510, the Florida Supreme Court sought to align Florida's summary judgment rule with the

7

federal summary judgment standard. <u>In re: Amends. to Fla. Rule of Civ. Proc. 1.510</u>, 317 So. 3d 72, 74 (Fla. 2021). According to the Florida Supreme Court, "those applying new rule 1.510 must recognize the fundamental similarity between the summary judgment standard and the directed verdict standard." <u>Id.</u> at 75. Both standards focus on "whether the evidence presents a sufficient disagreement to require submission to a jury." <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986)). And under both standards, "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried." <u>Id.</u> (citations omitted). Those applying the new rule 1.510 must recognize that the correct test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248). Thus, in Florida it will no longer be plausible to maintain that "the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised." <u>Id.</u> (citation omitted).

One of the principal purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims or defenses." <u>In re:</u>

Amends. to Fla. Rule of Civ. Proc. 1.510, 309 So. 3d 192, 194 (Fla. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)). However, the Florida Supreme Court, in adopting this amendment, reaffirmed "the bedrock principle that summary judgment is not a substitute for the trial of disputed fact issues." Id. As the United States Supreme Court itself has emphasized, the summary judgment rule must be implemented "with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury." Id. (quoting Celotex, 477 U.S. at 327).

Here, the trial court erred by granting summary judgment in favor of the Dealership because there are genuine disputes of material fact that preclude the entry of summary judgment. First, Mr. Matthews' deposition testimony raised a genuine dispute of material fact as to his purpose in executing the Loaned Vehicle Agreement. Mr. Matthews initially testified that his intent in signing the Loaned Vehicle Agreement was so that he could take the Expedition home overnight to show it to his wife, as the lease on their Tahoe was close to its end, and they were interested in purchasing an Expedition. Mr. Matthews additionally stated that he wanted to see if the Expedition would fit in his garage before deciding to buy one. Mr. Matthews subsequently attempted to clarify this testimony by stating that another

9

purpose in executing the Loaned Vehicle Agreement was that he needed a vehicle to drive while his Tahoe was awaiting service at the Dealership's service department. By providing two potential reasons for executing the Loaned Vehicle Agreement, Mr. Matthews created a genuine dispute of material fact as to his true intent, which required a finder of fact to resolve.

Further, the trial court found that it was undisputed that Mr. Matthews brought the Tahoe into the Dealership to be serviced based on Mr. Matthews' deposition testimony. However, the record supports differing inferences on this issue. The service manager for the Dealership testified that records were customarily kept of vehicles brought in for service by the Dealership. Yet, no records were ever produced by the Dealership showing that Mr. Matthews brought his Tahoe in for servicing. In fact, the Dealership's counsel stated at the summary judgment hearing that there were no service records, which, when combined with the service manager's testimony, supports the inference that Mr. Matthews never brought his Tahoe in for servicing. Therefore, there was a genuine dispute of material fact as to whether Mr. Matthews brought his Tahoe in for servicing.

Finally, the trial court impermissibly relied on the intent of Mr. Matthews when it decided that there was no dispute as to any material fact. In particular, the trial court stated that even though Mr. Matthews did not have

his vehicle serviced, it was his intent to do so. As a result, the court reasoned that it was Mr. Matthews' intent to have his Tahoe serviced which determined that he rented the Expedition under the Graves Amendment. But because "intent is a question of fact that should not be decided on a summary judgment," it was improper for the trial court to base its summary judgment ruling that the Graves Amendment applied on Mr. Matthews' intent. See Hodge v. Cichon, 78 So. 3d 719, 723 (Fla. 5th DCA 2012); see also Kuppinger v. JM. JZ Enters., Inc., No. 21-80492-CV, 2021 WL 6054564, at *9 (S.D. Fla. Oct. 18, 2021) (finding that under Florida law, "intent is a question of fact that should not be decided on a summary judgment [motion]").

The genuine disputes of fact raised by the record evidence are material under the summary judgment rule, since they relate to whether the Dealership rented the Expedition to Mr. Matthews. The trial court held that there was a valid rental agreement because Mr. Matthews submitted his Tahoe for service in consideration of receiving the Expedition. This exchange, according to the trial court, constituted a valid rental agreement under the Graves Amendment.

However, the facts in the record and the inferences from them demonstrate that Mr. Matthews' purpose could have been to just take the

Expedition home for a test drive, as opposed to taking the Expedition home because his Tahoe was still awaiting service. In fact, there are sufficient material facts in dispute as to whether he even brought the Tahoe in to be serviced at all. Therefore, there is a genuine dispute regarding whether Mr. Matthews ever submitted his vehicle for servicing at the Dealership, which is what formed the basis for the trial court's ruling that there was a valid rental agreement between Mr. Matthews and the Dealership. Thus, the issue of whether Mr. Matthews brought his vehicle in to be serviced should have been submitted to a jury for resolution and not decided by the trial court on summary judgment.

## Conclusion

Based on the foregoing, the trial court erred in granting summary judgment for the Dealership, as there are genuine disputes of material fact that relate to the Dealership's Graves Amendment defense. Accordingly, we reverse the order granting summary judgment and remand the matter to the trial court for further proceedings.

REVERSED and REMANDED.

JAY and SOUD, JJ., concur.