# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-0324
LT Case No. 2019-CA-000171
_____

TEKI WILLIAMS,

    Appellant,

    v.

JOHN WEAVER,

    Appellee.

_____

On appeal from the Circuit Court for Nassau County.
Eric C. Roberson, Judge

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellant.

Kansas R. Gooden, Miami, and Lara Edelstein, Boca Raton, of Boyd & Jenerette, P.A., for Appellee.

March 15, 2024


BOATWRIGHT, J.

Appellant, Teki Williams ("Williams"), appeals the trial court's entry of final summary judgment in favor of Appellee, John Weaver ("Weaver"). Williams argues the trial court's entry of final summary judgment was improper due to the existence of a genuine dispute of material facts. We agree and therefore reverse the entry of summary judgment and remand for further proceedings.

I.

Williams, at all times material to this analysis, was an employee of Royal Green Lawn & Ornamental Services, Inc. ("Royal Green"). Weaver hired Royal Green to spray the grass at his home with fertilizer and weed herbicide ("lawn services"). On November 3, 2017, Williams, in his capacity as an employee of Royal Green, arrived at Weaver's home to perform the lawn services and parked in the street in front of Weaver's house. Prior to the start of any lawn services, Williams began walking through the lawn to Weaver's front door to drop off job-related paperwork. In the course of traversing Weaver's lawn, Williams walked onto a deck located on the front lawn, which was at ground level. When Williams stepped on the deck, he slipped on a dark colored area covered in algae and fell. He injured his back as a result of the fall.

In his deposition, Williams testified that the grass on Weaver's lawn was wet, as it was early in the morning. When he approached the deck, he noticed that the wood looked old and dark in color; however, it did not appear to be wet. Williams believed the deck was safe to walk upon. Williams' observation that the deck seemed to be a safe walking surface was based both on the general appearance of the deck, and that the deck had a bench and decorations on it, thus indicating the deck's usability. After he slipped and fell, he noticed that the dark coloration was, in fact, a greenish algae that was all over the deck. He did not notice the algae prior to falling.

Weaver stated in his deposition that he annually cleaned the deck but that it had not been cleaned for a few months preceding Williams' fall. He stated he walked by the deck every day, but he did not notice the deck was slippery. He stated he did not think the deck was slippery at the time of Williams' fall, but he acknowledged that it could have been slippery. *Finally, after viewing a picture of the deck taken at the time of the incident, Weaver agreed that the deck needed to be cleaned at the time of the fall and that the portion of the deck with the algae on it was unsuitable for walking.*

2

The picture, which is contained in the record on appeal, depicts a wood deck that is almost completely dark in color. The picture additionally shows that the deck has a bench on it and some decorative pumpkins and potted plants.

Following a hearing on Weaver's motion for summary judgment, the trial court ruled that there was no genuine dispute as to the material facts and granted summary judgment in favor of Weaver. In particular, the trial court found that Williams was an employee of an independent contractor who was injured in the course and scope of performing his contractual duties. Further, the trial court found, based on the parties' testimony and the picture of the deck, that no reasonable jury could find that the green algae on the deck was anything but open and obvious. The court postulated that because the grass was wet, and the deck's condition of having algae was apparent, it was "common sense" that one could fall on the deck. The court concluded that if Williams had been paying attention, the fall would not have happened. This appeal follows.

## II.

A trial court's ruling on a motion for summary judgment is subject to a de novo standard of review. *Baxter v. Northrup*, 128 So. 3d 908, 910 (Fla. 5th DCA 2013) (citing *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). "To prevail on a motion for summary judgment, a movant must show that (1) 'there is no genuine dispute as to any material fact' and (2) 'the movant is entitled to judgment as a matter of law.'" *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023) (quoting Fla. R. Civ. P. 1.510(a)). When determining if there is a genuine dispute of material fact, "[t]he court views the evidence in a light most favorable to the non-moving party, and a genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for that party." *Id.* (citing *Baum v. Becker & Poliakoff, P.A.*, 351 So. 3d 185, 189 (Fla. 5th DCA 2022)).

A primary purpose of Florida's summary judgment rule "is to 'isolate and dispose of factually unsupported claims or defenses.'" *Olsen v. First Team Ford, Ltd.*, 359 So. 3d 873, 877 (Fla. 5th DCA 2023) (quoting *In re: Amends. to Fla. Rule of Civ. Proc.*

3

*1.510*, 309 So. 3d 192, 194 (Fla. 2020)). The Florida Supreme Court, however, noted that in adopting this amendment, they reaffirmed "the bedrock principle that summary judgment is not a substitute for the trial of disputed fact issues." *Id.* "As the [United States] Supreme Court itself has emphasized, the summary judgment rule must be implemented 'with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

A.

Generally, property owners must maintain their premises in a reasonably safe condition for business invitees, including employees of independent contractors. *Pertl v. Exit Info. Guide, Inc.,* 708 So. 2d 956, 957–58 (Fla. 1st DCA 1997). However, a property owner who employs an independent contractor to perform work on his property will not be held liable for injuries sustained by the employee of an independent contractor during the performance of that work. *Phillips v. Republic Fin. Corp.*, 157 So. 3d 320, 324 (Fla. 5th DCA 2015).

There are two noteworthy exceptions to this rule. An owner can be held liable for damages sustained by an employee of an independent contractor where either (1) the property owner actively participates in or exercises direct control over the work; or (2) the property owner negligently creates or negligently approves a dangerous condition. *Conklin v. Cohen*, 287 So. 2d 56, 60 (Fla. 1973). This rule and its exceptions, however, apply only if the independent contractor or employee is injured in the course of the work he was hired to perform. *Strickland v. Timco Aviation Servs., Inc.*, 66 So. 3d 1002, 1006 (Fla. 1st DCA 2011) (holding that if the employee is injured not in the course of the work the contractor was hired to perform, but rather while the employee is attempting to access the premises to perform that work, the independent contractor standard does not apply). Thus, when an employee of an independent contractor is injured outside the scope of the contracted duties, courts will analyze the duty of the property owner to the employee under the separate framework applied to business visitors or invitees. *Id.*

4

In this case, Weaver contracted with Royal Green to spray his lawn with fertilizer and weed herbicide. Williams had not yet begun spraying the lawn at the time he was injured on Weaver's premises. He was merely entering the property to perform the contracted work on the lawn. As such, his injuries were not sustained in the course of performing the work under the contract, i.e., spraying the lawn. Thus, Weaver's duty to Williams at the time of his injury should be analyzed under the separate framework governing a landowner's duty to business invitees.

B.

As stated previously, property owners must maintain their premises in a reasonably safe condition for business invitees. A landowner ordinarily "owes an invitee two independent duties: (1) to give warning of concealed perils which are known or should be known to the owner, but which are not known to the invitee[;] and (2) to maintain the premises in a reasonably safe condition." *Frazier v. Panera, LLC*, 367 So. 3d 565, 567 (Fla. 5th DCA 2023).

Regarding the duty to warn of any concealed dangers, "[t]he obvious danger doctrine provides that an owner or possessor of land is not liable for injuries to an invitee caused by a dangerous condition on the premises when the danger is known or obvious to the injured party, unless the owner or possessor should anticipate the harm despite the fact that the dangerous condition is open and obvious." *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 576–77 (Fla. 5th DCA 2005) (citing *Ashcroft v. Calder Race Course, Inc.,* 492 So. 2d 1309 (Fla. 1986)). The "obvious danger" doctrine "rests upon the generally accepted notion that owners and possessors of real property should be legally permitted to assume that those entering their premises will perceive conditions that are open and obvious to them upon the ordinary use of their senses." *Id.* at 577. However, the test "is not whether the object itself is obvious, but [rather] *whether the dangerous condition of the object is obvious*." *Conrad v. Boat House of Cape Coral, LLC*, 331 So. 3d 857, 861 (Fla. 2d DCA 2021) (quoting *Pratus v. Marzucco's Constr. & Coatings, Inc.*, 310 So. 3d 146, 149 (Fla. 2d DCA 2021)). To determine whether the doctrine applies in a given case, courts are required to consider all of the facts and

"circumstances surrounding the accident and the alleged dangerous condition." *Id.*

Although it was undisputed that the deck itself was open and obvious, whether the dangerous condition of the deck was obvious was in dispute at the time the trial court granted summary judgment in favor of Weaver. In particular, although the deck appeared dark, Williams testified that it did not look wet, and the slippery condition was not known to him until he stepped on the deck. It was not until he fell that he noticed the dark area was algae, which was slippery in nature. This was confirmed by Weaver, who had admitted that although he walked by the deck daily, he did not think it was slippery at the time when Williams fell but stated that it could have been slippery. This clearly showed that even Weaver was uncertain about the dangerous condition of the deck, i.e., its slipperiness. As a result, this raises a genuine dispute of material fact regarding whether the dangerous condition of the deck was open and obvious. *See Pratus*, 310 So. 3d at 150 (finding that where an employee of a subcontractor stepped into an uncovered drain on a construction site and was injured, though the drain itself was obvious, genuine issues of material fact existed regarding whether "the uncovered drain presented an open and obvious danger"); *see also Smile v. Fla. POP, LLC*, No. 20-14141, 2022 WL 18956202 (S.D. Fla. Jan. 14, 2022) (finding that where a patron of a restaurant slipped and fell while stepping into a puddle of water in the parking lot, summary judgment was not appropriate because even though the puddle was open and obvious, the dangerousness of the puddle, i.e. its slippery nature, was not open and obvious).

Notwithstanding the foregoing analysis regarding whether the dangerous condition of the deck was open and obvious, Weaver had a separate and distinct duty to maintain the premises in a reasonably safe condition. While the fact that a danger is obvious discharges a landowner's duty to warn, it does not discharge the landowner's duty to maintain his property in a reasonably safe condition. *See Marriott Int'l, Inc. v. Perez-Melendez*, 855 So. 2d 624, 631 (Fla. 5th DCA 2003). Despite a hazard being open and obvious, a property owner has a duty to maintain the property in a reasonably safe condition by repairing conditions that they foresee will cause harm. *Middleton v. Don Asher & Assoc. Inc.*, 262 So. 3d

6

870, 872 (Fla. 5th DCA 2019). As a result, "[w]hen an injured party alleges that the owner or possessor breached the duty to keep the premises in a reasonably safe condition, an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition would cause injury despite the fact it was open and obvious." *Aaron*, 908 So. 2d at 578.

Here, Weaver acknowledged that the deck needed to be maintained during the year. He also acknowledged that it needed to be cleaned at the time of Williams' fall. Based on this, he also agreed that the portion of the deck with the algae on it should not have been walked upon. This raises a genuine dispute of material fact concerning whether Weaver had properly maintained the deck in a reasonably safe condition and whether he should have anticipated that the dangerous condition would cause injury.

## III.

Because genuine issues of material fact exist regarding Weaver's duties to warn and to maintain his premises, we reverse the order granting the motion for summary judgment and remand for further proceedings.

REVERSED and REMANDED for further proceedings.

JAY, J., concurs.
MACIVER, J., dissents, with opinion.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

7

MacIver, J., dissenting.

I agree with the court below that no reasonable jury could find that a prudent person walking in rubber boots across a wet lawn could fail to know that crossing a wooden discolored deck may pose a slipping hazard.

This observation embodies two important concepts. First, the concept that a property owner is not liable for the least common denominator of care exercised by visitors to his or her property. Second, that not every conceivable factual question must be determined by a jury—only those that pose a genuine dispute of a material fact.

The majority here has found two questions appropriate for jury consideration. First, whether the slippery nature of the wooden deck was open and obvious. Next, whether Appellee, Weaver, exercised reasonable care in maintaining his private property. I disagree on both counts and would affirm the court below.

The bulk of torts jurisprudence is still a matter of common law. The political power of the people to decide these rules has not been exercised by their legislative representatives. Rather, the courts have attempted to observe common societal behaviors and deduce what the otherwise informalized rule would be. Because common-law rules are formed from our observations of common behavior, they must be grounded in a common sense understanding of that behavior.

The courts' observations become precedent to be followed in later cases. The precedents also become the formalized rule that informs future parties what their rights and obligations are under the common law. If the decision tree on whether a legal duty exists has become so complex that judges have difficulty determining the legal duties of the homeowner, what does that say about the clarity of the law for the parties that are supposed to be bound by it?

8

Finally, while factual questions about whether the rules have been violated in individual circumstances are left to the jury, the question of what is the common law rule always remains the province of the court itself.

*Open and obvious nature of the hazard*

The majority has found that there is a genuine dispute of material fact regarding whether the dangerous condition of the deck was open and obvious. Specifically, the majority notes that although the deck appeared dark, Williams testified that it did not look wet, and the slippery condition was not known to him until he stepped on the deck. However, as the court below noted it was Williams who, while wearing rubber boots, walked across the wet lawn before stepping onto the deck. Williams—by his own testimony—introduced an element of the dangerous condition.

Turning back to common sense understanding of societal expectations and behaviors, we can again observe that a property owner is not expected to be liable to the least amount of care that can be exercised by someone on their property. The fact that the discolored deck could be slippery if the person walking across it got it wet is an obvious fact. It is just as clear and obvious to the visitor as it would be to a homeowner. Stated more simply, no reasonable jury could find that a prudent person walking in rubber boots across a wet lawn could fail to know that crossing a wooden discolored deck may pose a slipping hazard.

*Duty to maintain property in a reasonably safe condition*

The majority also finds a genuine dispute of material fact concerning whether Weaver had properly maintained the deck in a reasonably safe condition and whether he should have anticipated that the dangerous condition would cause injury. I disagree.

The majority notes, "[w]hen an injured party alleges that the owner or possessor breached the duty to keep the premises in a reasonably safe condition, an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition

would cause injury despite the fact it was open and obvious." *Aaron*, 908 So. 2d at 578. Here, though, there is no allegation that the deck alone was dangerous. Rather, based upon the testimony of both parties, the deck became slippery when Williams crossed it wearing wet rubber boots. In other words, while Weaver may have had a duty to maintain his property in such a manner so as not to create a dangerous condition, that principle cannot logically be extended to require him to foresee and accommodate a lack of someone else's care that exacerbates a condition of his property. Because I would not find that Weaver's duty extended so far, there is no material question regarding the reasonableness of his level of maintenance the property.

Based upon the foregoing, I must respectfully dissent.