# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 5D2023-2723
LT Case No. 2020-CA-491

———————————————————

DONNA RUTH  and TIMOTHY
RUTH,

    Appellants,

    v.

GUERRIERI MANAGEMENT, INC.,
d/b/a TACO BELL,

    Appellee.

———————————————————

On appeal from the Circuit Court for Hernando County.
Donald E. Scaglione, Judge.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellants.

Elizabeth C. Tosh and Michael Monteverde, of Zinober, Diana &
Monteverde, P.A., Tampa, for Appellee.


November 22, 2024


BOATWRIGHT, J.

Appellants, Donna and Timothy Ruth, appeal the trial court's entry of final summary judgment in favor of Appellees, Guerrieri Management, Inc. d/b/a Taco Bell, et al. ("Taco Bell"). Appellants argue the trial court's entry of final summary judgment was improper due to the existence of a genuine dispute of material facts. We agree.

## I.

Donna Ruth ("Ruth") entered a Taco Bell restaurant located in Hernando County (the "restaurant") and intended to use its restroom before ordering. She claimed that as she was walking inside the restroom, she slipped and fell on a wet floor that had been freshly mopped by one of the restaurant's employees. She allegedly sustained injuries to her neck, back, and left hip.

Appellants filed a complaint alleging that Taco Bell breached its duty of care to warn Ruth of its wet floors and/or the slippery and dangerous condition of the restroom floors and to maintain its floors in a safe condition. Timothy Ruth filed a claim for loss of consortium. Taco Bell answered, denying the allegations and asserting various affirmative defenses.

In her deposition, Ruth testified that there was no rain on the date of the incident. She opened the double doors going into the restaurant, entered the restaurant, took an immediate right, walked down a hallway and turned left into the ladies' room to wash her hands. The hallway floor was not wet. She did not notice signage of any nature as she entered the restaurant and walked down the hallway before she entered the restroom. She admitted during her deposition that a photograph taken after the incident shows there was a wet floor sign in the hallway; however, she explained that because the sign was located at the corner of the hallway leading into the dining room, it was not visible to patrons until they were exiting the restroom and walking back toward the dining room. It is undisputed that there was no wet floor sign inside the restroom or immediately outside the restroom adjacent to the restroom door.

Ruth entered the ladies' room, shut the door, took a few steps, slipped on water, and fell. Ruth was looking in front of her when she was walking but did not see that the floor was wet until she slipped on it. When asked if she had knowledge of any wetness on the floor prior to the fall, she testified that she was not looking down directly at her feet, and that she felt the wetness when she slipped and was on the floor. Ruth explained that the whole floor was wet, and she got wet when she hit the floor. She further testified that there was more excess water near the drain in the middle of the restroom, and this was the area where she fell.

Taco Bell admitted in its answers to interrogatories that the floor was visibly mopped, but stated Ruth was negligent because she "fail[ed] to see a visibly mopped floor and ignor[ed] signage." Taco Bell also admitted that the floor had been recently mopped in the restroom with a "lightly dampened" mop, but disputed that the floor was "wet" at the time of the incident.

Christine Sterling ("Sterling"), the shift manager at the restaurant, testified in her deposition that she was working on the date of the incident. She was first notified of the fall when Ruth came to the front counter and told her that she had slipped and fallen in the restroom. Sterling completed an incident report, contacted her managers, and did not inspect the floor and take pictures until after Ruth had left. Upon inspection, she observed that certain areas of the floor "were damp" and that the damp area was mostly near the drain. According to Sterling, Ruth told her that her pants were wet. Sterling stated Ruth's clothing was "void of moisture" and no wetness was visible on her clothes. However, Sterling did not touch Ruth's pants to confirm this, and she was unaware of any evidence showing that Ruth did not fall.

Sterling admitted that the floors were mopped prior to the fall by an employee. The employee customarily would start mopping in the lobby and then move to the bathrooms. She "guessed" the floor was mopped approximately 30 minutes prior to the fall. Sterling confirmed that the floors were supposed to be "dry mopped." Dry mopping consists of using a mop and wringing it out at least three times before using it, so that it is barely moist. Sterling testified

that if one dry mops, the mop is almost dry. The solution used in dry mopping is soapy water.

As indicated above, Sterling testified she did not inspect the floor until after she filled out the incident report with Ruth (which took approximately 10-15 minutes), contacted her general manager, and notified her area manager. Sterling could not say whether the mop that was used on the restroom floor had been spun and strained on the date of the incident. She testified the store only had two wet floor signs, so one would be placed in the hall. She testified that there was nothing on the restroom door, such as a note taped to the door, to indicate that the floors had recently been mopped. She stated this was not necessary, as the floors were dry when the incident occurred—which is inconsistent with her testimony that the floor was still damp when she inspected it after the fall.

Sterling's incident report indicated that "[t]he floor had just been mopped, the customer went in to use the restroom and slipped on the floor." Under the "Cause of accident or incident" section of the report, she wrote: "Wet floor from being just resently (sic) being mopped." Under the description of the incident, Sterling wrote that: "The floor is very slick, and her shoes slide easy on the floor."

Ruth's deposition testimony directly contradicted several of Sterling's statements. According to Ruth, Sterling told her that the floor had just been mopped and that "whoever mopped the floor failed to dry mop it and there was an excessive amount of water on the floor." According to Ruth, she asked Sterling why the wet floor sign had not been placed in front of the bathroom door, to which Sterling responded, "we're [not allowed] to put it inside the bathroom."

Taco Bell's CEO, Gordon Guerrieri ("Guerrieri"), testified as well. Guerrieri testified that there was no policy against wet floor signs being placed in the restroom. He would not have any reason to dispute that the wet floor sign was placed in the restaurant's entrance and not in front of the restroom. He testified that Sterling said that the floor was mopped just prior to the fall. Guerrieri

4

confirmed that dry mopping involves using a wet mop that is soaked in a soapy solution and then wrung out. He stated that when the floors are dry mopped, employees are supposed to put out a wet floor sign after or during the process, but they generally would not put any signs on the door.

Taco Bell filed its motion for summary judgment. Taco Bell argued in its motion that there was no evidence to support that the floor was wet at the time of the fall, other than Ruth's testimony. Taco Bell also argued that Ruth could not establish it had actual or constructive knowledge of the wetness of the floor. Appellants filed a response to the summary judgment motion. Appellants argued there was sufficient evidence that the floor was wet at the time of the fall, and there was sufficient evidence to present a genuine dispute of fact about the issue of actual or constructive notice.

The trial court determined it could not find any evidence to support that the floor was actually wet at the time of the fall other than what Ruth claimed, which the trial court found was not supported by the "objective evidence." The trial court also found that Appellants could not establish actual or constructive knowledge on the part of Taco Bell that the floor was wet. This appeal follows.

## II.

"A trial court's ruling on a motion for summary judgment is subject to a de novo standard of review." *Olsen v. First Team Ford, Ltd.*, 359 So. 3d 873, 876 (Fla. 5th DCA 2023) (citing *Baxter v. Northrup,* 128 So. 3d 908, 910 (Fla. 5th DCA 2013)). "To prevail on a motion for summary judgment, a movant must show that (1) 'there is no genuine dispute as to any material fact' and (2) 'the movant is entitled to judgment as a matter of law.'" *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023) (quoting Fla. R. Civ. P. 1.510(a)). In *Olsen*, this Court discussed the amendment to Florida Rule of Civil Procedure 1.510 as follows:

In amending Florida Rule of Civil Procedure 1.510, the Florida Supreme Court sought to align Florida's summary judgment rule with the federal summary judgment standard." *Olsen,* 359 So. 3d at 877 (citing *In re: Amends. to Fla. R. Civ. P. 1.510,* 317 So. 3d 72, 74 (Fla. 2021)). "According to the Florida Supreme Court, 'those applying new rule 1.510 must recognize the fundamental similarity between the summary judgment standard and the directed verdict standard.'" *Id.* Both standards focus on "whether the evidence presents a sufficient disagreement to require submission to a jury." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)). And under both standards, "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried." *Id.* (citations omitted). Those applying the new rule 1.510 must recognize that the correct test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson,* 477 U.S. at 248). Thus, in Florida it will no longer be plausible to maintain that "the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised." *Id.* (citation omitted).

One of the principal purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims or defenses." *In re: Amends. to Fla. R. Civ. P. 1.510,* 309 So. 3d 192, 194 (Fla. 2020) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)). However, the Florida Supreme Court, in adopting this amendment, reaffirmed "the bedrock principle that summary judgment is not a substitute for the trial of disputed fact issues." *Id.* As the United States Supreme Court itself has emphasized, the summary judgment rule must be implemented "with due regard . . . for the rights of

6

persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury." *Id.* (quoting *Celotex,* 477 U.S. at 327).

Here, the trial court erred by granting summary judgment in Taco Bell's favor because there are genuine disputes of material fact that preclude summary judgment. Negligence claims are comprised of four elements: duty, breach, causation, and damages. *Welch*, 357 So. 3d at 1278 (citing *Peoples Gas Sys. v. Posen Constr., Inc.,* 322 So. 3d 604, 612 n.8 (Fla. 2021)). In relation to this, property owners have a duty to maintain their premises in a reasonably safe condition for business invitees and "to give warning of concealed perils which are known or should be known to the owner, but which are not known to the invitee." *Williams v. Weaver*, 381 So. 3d 1260, 1264 (Fla. 5th DCA 2024).

"In actions arising from a plaintiff's slip and fall on a transitory substance in a business establishment, proof of the breach element is 'statutorily constrained' by section 768.0755, Florida Statutes." *Welch,* 357 So. 3d at 1278 (quoting *Encarnacion v. Lifemark Hosps. of Fla.,* 211 So. 3d 275, 278 (Fla. 3d DCA 2017)). That statute requires the plaintiff to "prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." *Dolgen Corp., LLC v. Doty*, 383 So. 3d 864, 867 (Fla. 5th DCA 2024) (citing § 768.0755(1), Fla. Stat.). A business owner has actual knowledge of a dangerous condition when the owner or one of its agents knows of or creates the dangerous condition. *Id.*

The trial court, in granting the motion for summary judgment, stated that "[t]he Court cannot find any evidence to support that the floor was actually wet at the time of the fall, other than Plaintiffs['] claims, which are not supported by the objective evidence." In addition, the trial court reasoned, "assuming the floor somehow had gotten wet sometime between the dry mop and the fall, Plaintiff cannot establish that Defendant had actual or constructive knowledge it was wet." In relation to this ruling, Taco Bell argues on appeal that there was zero evidence in the record to

7

support Appellants' argument that the floor was wet at the time of Ruth's fall and Taco Bell knew this but failed to warn her. We disagree, as the trial court's ruling and the position taken by Taco Bell are contradicted by the record evidence.

Ruth's deposition testimony raises a genuine issue of material fact as to whether the floor was wet at the time of her fall. According to Ruth, as she entered the ladies' room and took about two steps, she slipped on water and fell. She further testified that the whole floor was wet, she got wet when she hit the floor, and she never saw the warning sign.

Further, Taco Bell's answers to interrogatories raised a genuine issue of material fact regarding not only whether the floor was wet at the time of her fall, but also whether Taco Bell had actual or constructive knowledge that the floor was wet. In its answers, Taco Bell admitted that the floor was recently visibly mopped and stated Ruth was negligent for failing "to see a visibly mopped floor and ignoring signage." Taco Bell then proceeded to dispute that the floor was wet. Thus, as its basis for seeking summary judgment, Taco Bell argued on one hand that the floor was not wet, and on the other that Ruth was negligent because she failed to see the visibly wet floor. This argument is logically inconsistent, as Ruth could not conceivably have been negligent for failing to notice the visibly mopped floor if (as Taco Bell argues) the floor was not visibly wet.

Taco Bell further alleged that the floors were dry mopped, and thus, the floors could not have been wet. However, their CEO conceded that dry mopping involves using a wet mop that is soaked in a soapy solution and then wrung out. Specifically, he acknowledged that when the floors are dry mopped, employees are supposed to put out a wet floor sign after or during the process. There is at least a genuine dispute of material fact as to whether the floor was wet because the mop was wet when the floor was mopped. In addition, the manager, Sterling, testified the floor was still "damp" when she inspected the restroom after the incident—particularly in the area where Ruth alleged she fell. In addition, if

8

the floor was indeed dry, as Taco Bell argues, there would have been no need to put out a wet floor sign.

The trial court appears to have mistakenly relied upon Sterling's statement that the "flooring" would have been 100 percent dry by the time there were any customers in the store. It is clear that when she made that statement, Sterling was referring to the floor in the front of the store and was not referring to the restroom floors. Even if Sterling were referring to the restroom floors, Ruth's testimony contradicts Sterling's testimony. According to Ruth, Sterling told her that whoever mopped the floor failed to dry mop it, and there was an excessive amount of water on the floor.

Finally, Sterling's incident report belies her testimony and the position taken by Taco Bell on appeal. The report indicates the floor had just been mopped, and Ruth went into the restroom and slipped on the floor. The cause of accident is cited as the wet floor from being recently mopped, and the description of the incident describes the floor as being very slick and Ruth's shoes sliding easily on it.

Based on the record, Ruth presented ample evidence that the bathroom floor was wet at the time she slipped on it, and that Taco Bell was the cause of the floor being wet, having mopped it immediately prior to Ruth's fall. But the trial court improperly weighed the evidence and exclusively focused on the testimony presented from Taco Bell's employees in finding that the bathroom floor was not wet. This was error. Viewing the record evidence in a light most favorable to Appellants, a reasonable jury could return a verdict in their favor. *See Welch*, 357 So. 3d at 1280 (holding that "a reversal of summary judgment is not a finding for the plaintiff, but merely a recognition that the evidence is such that a reasonable jury *could* find for the plaintiff.") Therefore, a genuine dispute of material facts exists and summary judgment should not have been granted.

III.

Because genuine issues of material fact exist regarding whether Taco Bell had actual or constructive knowledge that the floor was wet prior to Ms. Ruth's fall and that they were the cause of it, we reverse the order granting the motion for summary judgment and remand for further proceedings.

REVERSED and REMANDED for further proceedings.

EDWARDS, C.J., and WALLIS, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____